Jimmie Lee JOHNSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–97–379–CR.

Court of Appeals of Texas,
Corpus Christi.

Oct. 8, 1998.

---

Before YANEZ, RODRIGUEZ and KENNEDY, JJ.[1]

**OPINION**

KENNEDY, Justice.

Appellant was convicted of aggravated sexual assault and sentenced to a fine of $10,000. and imprisonment for life. The indictment alleges three counts which, in order, allege penetration of the anus, female sexual organ, and the mouth of the victim. The court charged the jury on the latter two counts of the indictment. The jury found Appellant guilty on both charged counts.

The assault occurred in November of 1992. In May of 1994 the victim was shown a photo line up which contained a picture of appellant and she did not identify him as her assailant.

▮ In August of 1994 appellant was arrested based upon a warrant for the offense of delivery of a controlled substance. He pleaded guilty to this offense. Following his arrest on the controlled substance charge, appellant was interrogated about both the controlled substance and the still unsolved sexual assault case. He signed a consent form to give blood, saliva, and hair samples. Appellant challenged the validity of this search in a pre-trial motion to suppress which was denied by the trial court following a hearing thereon. The denial of this motion to suppress is the subject of appellant's first point of error.

At the hearing on the motion to suppress, the state called the sheriff of Gonzales County to testify that he had been investigating the assault case for several months and had asked several men to give blood samples. He stated that when appellant was brought to jail on the unrelated charge, he had a conversation with him where he sought to have appellant become an informant in drug cases in a certain area. In this connection he stated that he offered appellant a low bond to enable him to get out of jail if he would help the sheriff in drug cases. The sheriff denied that the low bond had anything to do with

Raquel Galle, Seguin, for Appellant.

W. C. Kirkendall, District Attorney, Seguin, for State.

1. Retired Justice Noah Kennedy assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon 1988).

the assault case. He then asked appellant if he would give a blood sample and appellant responded "no objections." The sheriff then went to his secretary's desk just outside of his office and asked her to prepare a consent form which appellant signed in front of the secretary's desk.

The state rested on the motion and appellant took the stand. He contradicted the sheriff's testimony, saying that the sheriff promised him a low bond if he signed the consent form. He stated that the sheriff never mentioned drugs in the conversation. He also stated that he signed the consent form in the sheriff's office and not in the presence of the sheriff's secretary.

When appellant rested the state called the sheriff's secretary. She confirmed the sheriff's testimony that the signing took place in her presence at her desk and that she then witnessed the signing.

■ The taking of a defendant's blood is a search and seizure under Texas constitutional law. To seize blood a warrant must be obtained. *Smith v. State*, 557 S.W.2d 299, 301 (Tex.Crim.App.1977). It would appear that the only exception to the warrant requirement in a search for blood would be that of consent. *id* at 302. Consent to search must be shown to be positive and unequivocal. There must not be duress or coercion, actual or implied. *Allen v. State*, 487 S.W.2d 120, 121 (Tex.Crim.App.1972).

The court of criminal appeals in *Dubose v. State*, 915 S.W.2d 493, 496 (Tex.Crim.App. 1996) held "at a suppression hearing the trial judge is the sole and exclusive trier of fact and judge of the credibility of the witnesses as well as the weight to be given their testimony."

We find no reason to disturb the trial court's findings as to the voluntariness of the consent. We OVERRULE point of error number one.

■ Point of error number two challenges the sufficiency of the evidence. The state's uncontradicted evidence shows that the victim drove to her apartment one night after finishing her shift at a local hospital. When she drove into the parking lot of her apartment complex, a man wearing a black turtle neck, a ski mask, and gloves forced his way into her car. He forced her to drive to a point outside of the city of Gonzales at which place he told her to stop. He then bound her hands and ankles and blindfolded her. He took the wheel of the car and drove to another location where he undressed her and raped her. He also forced her to perform oral sex on him. He then blindfolded her again and drove her back to her apartment.

The state's evidence contained an in-court identification of appellant by the victim together with circumstances tending to connect him with the crime. The in-court identification was:

Q. Did his ski mask ever come off during this time?

A. I believe so.

Q. When during the attack did the ski mask come off?

A. I think when he forced me to do oral sex, he took it off, and I looked at him while I am on my knees.

Q. Was there any artificial light out there? Do you know what I mean; other than moonlight?

A. It was dark. It was dark and I didn't see any moon.

She further testified:

Q. _____, can you describe for this jury the man that did this to you? You know he was a black man?

A. He was a black man.

Q. Do you have any idea how tall he was?

A. Like I said maybe like 5'9", something like that. He is black. He has a flat—his tummy is flat and I could tell that he isn't circumcised.

Q. You saw his face briefly when you were out there?

A. I believe I saw his face.

The Reporter: I'm sorry

The witness: I believe that I saw his face.

Q. _____, have you had an opportunity to look at this defendant? Jimmie Lee Johnson?

A. Pardon me?

Q. Have you had a chance to look at this defendant, Jimmie Lee Johnson?

A.  Yes, sir.

Q.  Do you believe or do you know whether or not that is the man that sexually assaulted you in November of 1992?

A.  I cannot tell a hundred percent that it is him, but I am positive.

Q.  I'm sorry?

A.  I'm positive that it is him.

Q  . . . But you are not a hundred percent positive?

A.  No, sir.

Q.  Why. can't you be a hundred percent positive?

A.  It was dark.  I blindfolded.  I was so scared.  He had a ski mask on most of the time.  I didn't take a look at him very good.  I was just so scared.  I don't think I would have a chance to identify him.  I thought I was going to die.

and later, she testified:

Q.  When the door was open, was that light on?

A.  I think it didn't work.

Q.  Alright. What about the headlights of your car?  Were they turned on or off?

A.  It is on.

Q.  They were on?

A.  They were on.

Q.  So the only light out there was the light of the headlights?

A.  Yes ma'am.

Q.  And at no time—am I correct to state that at no time was he in front of those headlights to where you could tell anything about him?

A.  No. I—I didn't want to take a look at him.  I believe that I will—I am not going to have a chance to tell this to anybody.  I just thought that I am going to die; he is going to kill me, so I didn't try to remember anything.

Q.  Well do you remember if it was a short time or a long time that he had the mask off?

A.  I believe that he didn't have the mask on while he drived back into town but I didn't take a look at him.

Q.  But the person who did this to you did not have a mask on for the entire trip back into town?

A.  I believe so.

Q.  You just didn't look at him?

A.  I didn't look at him.

Q.  Alright.

A.  I was so afraid.

In addition, the victim identified a sketch that was made of the rapist by a D.P.S.[2] artist with the aide of the victim, and this drawing was admitted into evidence.  The record also reflects, however, that the victim failed to recognize appellant's picture when it was included with other pictures in a photographic line up during the investigation of the crime.

To bolster its case the state offered proof of the following circumstances:

(1)  The DNA testing of appellant's blood by a state's witness showed him to be in a group of only 8.5 % of the black population to match the DNA samples of semen taken from the victim's dress.

(2)  Appellant lived in the remote area of Gonzales county where the rape took place for a part of his early life which, the state argues, would account for his knowing a safe place to go to avoid being seen or detected by other persons.

(3)  Appellant was shown to be uncircumcised which matched the victim's testimony about the rapist.

(4)  Appellant escaped from jail after his arrest and pending trial of the case which the state argues is evidence of guilt [3].

(5)  Appellant lived in an apartment only a short distance from where the victim lived.

Appellant offered testimony from an expert whose interpretation of the DNA testing showed appellant to be in a group of approximately twenty-six percent of the black popu-

---

2.  Department of Public Safety.

3.  He was subsequently rearrested.

lation. Because the jury heard both witnesses we defer to their judgment about who to believe about this.

■ Appellate courts should only exercise their fact jurisdiction to prevent a manifestly unjust result; ... those court's are not free to re-weigh evidence and set aside a jury verdict merely because the judges feel that a different result is more reasonable. A court of appeals may not reverse a jury's decision simply because it disagrees with the result; the appellate court must defer to jury findings, and may find the evidence factually insufficient only where necessary to prevent manifest injustice. *Cain v. State*, 958 S.W.2d 404, 407 (Tex.Crim.App.1997).

The state cites as authority this court's opinion in *Brown v. State*, 881 S.W.2d 582 (Tex.App.—Corpus Christi 1994, no pet.) in which the DNA evidence placed Appellant in a grouping of only four percent of the black population. However, as the state admits in *Brown* the state's evidence included a fingerprint of appellant in the apartment where the rape occurred. In addition, we note that in*Brown* the victim *positively* identified appellant from having seen his unmasked face when she turned on the light in her apartment.

From all of the evidence we hold that the state proved that the rape occurred but the evidence is not factually sufficient to prove beyond a reasonable doubt that Jimmie Lee Johnson is the guilty party. The in-court identification was not clear and unequivocal. The items cited by the state to incriminate appellant, i.e., the DNA testing, appellant's having lived in the area where the rape occurred, appellant's being uncircumcised, his escaping from jail, and his living an area near the victim's apartment could all apply to many people other than him.

We do not substitute our judgment for that of the jury but we do find a manifest injustice. There is no greater "manifest injustice" than to send a person to prison whose guilt has not been established beyond a reasonable doubt. We REVERSE AND REMAND THE CASE.

Dissenting and Concurring opinion by Justice NELDA RODRIGUEZ.

RODRIGUEZ, Justice, dissenting and concurring.

I agree with the majority's holding regarding appellant's challenge to the trial court's denial of his motion to suppress, however, I respectfully dissent as to its holding that there was factually insufficient evidence to support the jury's finding of guilt.

In reviewing a challenge to the factual sufficiency of the evidence, we consider all of the evidence without the prism of "in the light most favorable to the prosecution" and set aside the verdict only if it is so against the overwhelming weight of the evidence that it is manifestly unjust and clearly wrong. *Clewis v. State*, 922 S.W.2d 126, 135 (Tex. Crim.App.1996). It is well established in Texas jurisprudence that when reviewing a factual sufficiency point of error, we must remain appropriately deferential to the trial court so as to avoid this Court substituting its judgment for that of the factfinder. *Id.* at 132. It is the trier of fact who judges the credibility of the witnesses and the weight to be given their testimony, and it may resolve or reconcile conflicts in the testimony as it sees fit. TEX.CODE CRIM PROC. ANN. art. 38.04 (Vernon 1979); *Clewis*, 922 S.W.2d at 133; *Haskins v. State*, 960 S.W.2d 207, 209 (Tex.App.—Corpus Christi 1997, no pet. h.). This Court may only reverse a jury's findings if the verdict is so against the great weight and preponderance of the evidence that it is "manifestly unjust," "shocks the conscience," or "clearly demonstrates bias." *Clewis* 922 S.W.2d at 135 (citing *Meraz v. State*, 785 S.W.2d 146, 149 (Tex.Crim.App.1990)). The court of criminal appeals has held that "[a]ppellate courts should only exercise their fact jurisdiction to prevent a manifestly unjust result; ... those courts 'are not free to reweigh the evidence and set aside a jury verdict merely because the judges feel that a different result is more reasonable.'" *Clewis*, 922 S.W.2d at 135 (quoting *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 634 (Tex.1986) (quoting *Dyson v. Olin Corp.*, 692 S.W.2d 456, 458 (Tex.1985) (Robertson, J., concurring))).

While the facts of this case present what I consider to be a "close call" on the issue of

factual sufficiency, it is the jury who must weigh the evidence and make the appropriate determination. As noted by the majority, the record illustrates that the victim identified appellant in court as the rapist. I agree with the majority that it appears this in-court identification was not "clear and unequivocal." However, the inquiry does not stop there—we must consider all the evidence to make a proper factual sufficiency determination. The other evidence included:

(1) DNA testing that placed appellant in a group of only 8.5% of the black population to match the DNA samples found on the victim's clothing.

(2) Testimony by appellant's expert that the DNA testing showed appellant to be in a group of 26% of the black population to match the DNA samples found on the victim's clothing.

(3) The victim's in-court testimony that the eyes, nose, mouth, and shape of the face in a composite sketch of the rapist (made by a D.P.S. artist based upon the victim's identification) matched those of appellant.

(4) Appellant was shown to be uncircumcised which matched the victim's description of the rapist.

(5) Appellant escaped from jail after his arrest while awaiting trial for this offense.

(6) Appellant lived in an apartment only a short distance from where the victim lived.

(7) Appellant lived for part of his early life in the remote area of Gonzalez County where the rape occurred.

Having considered all the evidence and giving proper deference to the jury's findings, I would hold the evidence was not so overwhelming such that the jury's verdict "shocked the conscience," "clearly demonstrated bias," or was "manifestly unjust." Accordingly, I would overrule appellant's second point of error and affirm the judgment of the trial court.