Affirmed and Memorandum Opinion filed September 28, 2004









Affirmed and Memorandum Opinion filed September 28,
2004.

 

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-03-01051-CR

____________

 

CHRISTOPHER
RAYMOND JACKSON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 232nd
District Court

Harris County, Texas

Trial Court Cause No. 926,376

 



 

M E M O R A N D U M   O P I N I O N

The jury found appellant guilty of sexual
assault.  Based on the jury’s
finding  that an enhancement paragraph
alleging a prior conviction for sexual assault was true, appellant was
sentenced to a mandatory life sentence in the Texas Department of Criminal
Justice, Institutional Division.  In a
single point of error, appellant contends the evidence was legally and
factually insufficient to support his conviction because the victim was unable
to  identify him in open court.  We affirm.

 








FACTUAL AND PROCEDURAL BACKGROUND

On April 24, 2002, the victim was sexually
assaulted in her home by a man she met the previous evening through a
friend.  The State attempted to prove
appellant’s guilt through DNA testing and other circumstantial evidence.  On the night of the assault, the victim
identified appellant by name as her attacker and supplied his telephone number
to police.  The police later contacted
appellant at this telephone number and arranged to obtain his photograph and a
DNA sample.  Two independent laboratories
tested the appellant’s DNA sample against the sample taken from the victim’s
body.  Both laboratories found that the
two samples matched.  At appellant’s
trial, over sixteen months after the assault, the victim failed to identify
appellant as the man who assaulted her. 
She did, however, identify her assailant from a photograph police took
shortly after the assault.  Appellant’s
telephone records revealed numerous calls between the victim and appellant on
the night of the assault.  The victim’s
friend also identified appellant in court as the man she introduced to the
victim the evening before the assault.

The jury found appellant guilty of sexual
assault and further found the enhancement paragraph (alleging a prior sexual
assault) to be true.  Appellant received
a mandatory twenty year sentence and now brings this appeal.

ANALYSIS

In his sole point of error, appellant
contends that the evidence was legally and factually insufficient to support
his conviction because the victim was unable to identify him in open court.








In evaluating a legal sufficiency
challenge, we view the evidence in the light most favorable to the
verdict.  Wesbrook v. State, 29
S.W.3d 103, 111 (Tex. Crim. App. 2000) (en banc).  The issue on appeal is not whether we, as a
court, believe the State’s evidence or believe that appellant’s evidence
outweighs the State’s evidence.  Wicker
v. State, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984) (en banc).  The verdict may not be overturned unless it
is irrational or unsupported by proof beyond a reasonable doubt.  Matson v. State, 819 S.W.2d 839, 846
(Tex. Crim. App. 1991) (en banc); see also Swearingen v. State,
101 S.W.3d 89, 95 (Tex. Crim. App. 2003).

In evaluating a factual sufficiency
challenge, we view the evidence in a neutral light.  Zuniga v. State, No. 539-02, 2004 WL
840786, at *7 (Tex. Crim. App. Apr. 21, 2004). 
The evidence is factually insufficient if (1) the evidence supporting
the verdict is too weak to find guilt beyond a reasonable doubt, or (2) the
contrary evidence is strong enough that the beyond-a-reasonable-doubt standard
could not have been met.  Id.

Appellant relies on the victim’s failure
to identify him in open court.  The
victim identified her attacker as Christopher Jackson, a man she met the
previous evening through a friend.  But,
when asked whether she saw the man in the courtroom that her friend introduced
her to, the victim twice responded that she did not.[1]  








However, the State also introduced
evidence from two DNA experts—Dr. Joseph Matthew, the supervisor of the Harris
County Medical Examiner’s Forensic DNA Lab, and Jennifer McCue, a forensic DNA
analysis employed by IndentiGene.  Dr.
Matthew testified that appellant’s DNA sample matched the sample taken from the
victim, that the frequency of appellant’s DNA profile occurring in another
person was 1 in 6.2 billion, and that the frequency of appellant’s DNA profile
occurring in another person within the black 
population was 1 in 1.8 quadrillion.[2]  Similarly, McCue testified appellant’s DNA
sample matched the sample taken from the victim, and that the frequency of
appellant’s DNA profile occurring in another person was 1 in 13.5 quadrillion.  The State also introduced evidence that (1)
the victim knew appellant, (2) she told a police officer her assailant was
named Chris Jackson, (3) she gave the officer appellant’s phone number, (4) she
identified a picture of appellant taken by the officer, and (5) appellant had
telephoned the victim despite denying knowing her.

In support of his position that this
evidence was insufficient in light of the victim’s inability to identify him,
appellant cites Johnson v. State, 978 S.W.2d 703 (Tex. App.—Corpus
Christi 1998), aff’d, 23 S.W.3d 1. 
In Johnson, the victim testified in court, but was unable to
unequivocally identify the defendant.  Id.
at 705–06.  To bolster its case, that
State introduced DNA evidence that showed appellant was in a group of only 8.5%
of the black population to match the samples taken from the victim.[3]  Id. at 706.  The court of appeals held that the DNA
evidence was factually insufficient because it “could . . . apply to many
people other than [the defendant].”  Id.
at 707.








The State counters with two cases in which
DNA evidence was held to be sufficient.  See
Hinojosa v. State, 4 S.W.3d 240, 246 (Tex. Crim. App. 1999); Roberson
v. State, 16 S.W.3d 156, 172 (Tex. App.—Austin 2000, pet. ref’d).  In Hinojosa, the DNA expert testified
that only 1 in 19,900,000 randomly selection people within the defendant’s
racial group would match the sample taken from the victim.[4]  4 S.W.3d at 243.  The Court of Criminal Appeals held that
“these impressive statistics support the jury’s conclusion that appellant, as
opposed to some unidentified ‘suspect’ also sharing the same DNA profile,
sexually assaulted, kidnapped, and killed [the victim].”  Id. at 245.  In Roberson, the DNA expert testified
that only 1 in 420 billion people within the black population would match the
defendant’s profile.[5]  16 S.W.3d at 162.  The court of appeals held that “[t]he DNA
(RFLP analysis) evidence was ‘strong evidence’ of [the defendant’s]
participation in the crime.”  Id.
at 168.

This case is more similar to Hinojosa
and Roberson than to Johnson. 
The experts here testified that the likelihood of appellant’s DNA
profile occurring within his racial group was either 1 in 1.8 quadrillion or 1
in 13.5 quadrillion.  Thus, the
likelihood that another person shares the same profile as appellant is even
lower than the likelihood that another person shares the same profile as the
defendants in Hinojosa and Roberson.  See Hinojosa, 4 S.W.3d at 243; Roberson,
16 S.W.3d at 162.  By contrast, in Johnson
the likelihood of another person sharing the same profile as the defendant
was 8.5%, or roughly 1 in 12.  See
23 S.W.3d at 706.  Although no set
percentage will automatically satisfy the beyond-a-reasonable-doubt standard,
of course, cf. Wilder v. State, 111 S.W.3d 249, 253 (Tex.
App.—Texarkana 2003, pet. ref’d) (“[W]e do not encourage the use of a
percentage equation in describing the concept of beyond a reasonable doubt . .
. .”), we are comfortable that the percentages presented in this case—1 in 1.8
quadrillion and 1 in 13.5 quadrillion—satisfy the standard.








Appellant argues that the DNA evidence
does not show that he committed the crime, but rather it only rules out a large
number of other possible suspects.  This
argument was also before the Hinojosa and Roberson courts, and
both courts rejected it.  See Hinojosa,
4 S.W.3d at 245; Roberson, 16 S.W.3d at 166.  Proof by circumstantial DNA evidence is not
subject to a more rigorous standard than proof by direct evidence; they are
equally probative.  Roberson, 16
S.W.3d at 167.  As the Court of Criminal
Appeals noted, “these impressive [DNA] statistics support the jury’s conclusion
. . . .”  Hinojosa, 4 S.W.3d at
245; see also Roberson, 16 S.W.3d at 167 (quoting Hinojosa).

Viewing the DNA evidence and the
additional circumstantial evidence offered by the State in the light most
favorable to the verdict, we conclude that a rational jury could have found
appellant guilty beyond a reasonable doubt. 
The evidence is therefore legally sufficient to support the
verdict.  See Matson v. State,
819 S.W.2d at 846.

Viewing the same evidence in a neutral
light, we also conclude that it is not too weak to support guilt beyond a
reasonable doubt.  Nor is the contrary
evidence—the victim’s inability to identify appellant in court—strong enough
that the beyond-a-reasonable-doubt standard could not have been met.  See Meeks v. State, 897 S.W.2d
950, 955 (Tex. App.—Fort Worth 1995, no pet.) (holding that evidence was
sufficient because “[t]he fact that the complainant failed to identify [the
defendant] at trial goes only to the weight and credibility of the witnesses
and was before the jury for their consideration”).  The evidence is therefore factually
sufficient to support the verdict.  See
Zuniga, 2004 WL 840786, at *7. 

We overrule appellant’s sole point of
error and affirm the judgment of the trial court.

 

 

 

/s/      Wanda McKee Fowler

Justice

 

 

 

Judgment
rendered and Memorandum Opinion filed September 28, 2004.

Panel
consists of Chief Justice Hedges and Justices Hudson and Fowler.

Do
Not Publish — Tex. R. App. P.
47.2(b).

 








 











[1]  The victim’s
testimony follows:

Q:         And
when you got there, when you got to her apartment who did you meet?

A:         I met
Chris.

Q:         Chris?

A:         Christopher.

Q:         Christopher
who?

A:         Jackson.

Q:         And do
you see him sitting in the courtroom today?

A:         No, I
don’t see him.

Q:         Looking
around you don’t see Christopher Jackson in this room.

A:         No.

 





[2]  A quadrillion
is represented by a one followed by fifteen zeros (1,000,000,000,000,000).  In his testimony, Dr. Mathews described this
probability as “one in one, 885 followed by 12 zeroes” (1 in
1,885,000,000,000,000).  Although the
record reflects that Dr. Mathews referred to this number as “about 1.8
quad-billion,” his testimony demonstrates the stated number is equivalent to
1.8 quadrillion.





[3]  In addition to
this DNA evidence, the State introduced evidence that the defendant had once
lived in the area where the victim was taken, was uncircumsized (as was the
victim’s attacker), escaped from jail after his arrest, and lived near the
victim.  Johnson, 978 S.W.2d at
706.





[4]  In addition to
this DNA evidence, the State introduced evidence that the defendant lived next
door to the victim, was familiar with the victim’s house, and returned home
from work at about the same time as the victim on the night of the murder.  Hinojosa, 4 S.W.3d at 245.





[5]  In addition to
this DNA evidence, the State introduced the results of an additional DNA
analysis and a blood grouping procedure. 
Roberson, 16 S.W.3d at 167–68.