COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

C. W. OLIVER, III,                                              )

                                                                              )              
No.  08-04-00202-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )               
179th District Court

THE STATE OF TEXAS,                                     )

                                                                              )            
of Harris County, Texas

Appellee.                           )

                                                                              )                   (TC# 961470)

                                                                              )

 

 

O
P I N I O N

 

C. W. Oliver, III
appeals his conviction of aggravated robbery with a deadly weapon.  A jury found Appellant guilty and the trial
court assessed punishment at 50 years=
confinement and imposed a $10,000 fine. 
We affirm.

Christine Meyers,
Katheryn Kelley, and her boyfriend, Ashton Posey, were roommates    in an apartment complex located off of
Rolling Creek and FM 1960.  On September
12, 2003, Christine Meyers came home from work at 4 a.m. and went to sleep in
her bedroom.  Early that afternoon, she
awoke to find two men in her room and one pointing a gun at her head.  The man pointing the gun was a six-foot tall
black man with short black hair.  Ms.
Meyers only saw the top half of his face because she was looking at the gun in
his hand.








Ms. Meyers was
ordered to turn over on her stomach and the men began asking her where the XO=s were in the house.  Ms. Meyers did not understand what they
wanted at first but then realized they were looking for the drug Ecstacy.  Ms. Meyers had never taken the drug but some
of her roommates had, and a few days before, there was a party in the apartment
and some people were using the drug.

One of the men
tied Ms. Meyers= hands
behind her back and pulled a pillowcase over her head, while the other looked
around her closet.  She heard the men
rustling around in her bedroom.  She then
heard them go into another room.

Mr. Posey was
asleep in his room when he felt someone nudging him in the back of his head
with a gun.  He woke up and looked over
his shoulder and saw the silver barrel of a gun and the gunman=s eyes. 
Mr. Posey was told not to look at them and then a pillow case was put
over his head.   The men then asked Mr.
Posey where he kept all of his drugs and money. 
Mr. Posey informed the men the only drugs he had was a joint located
downstairs in the kitchen and $5 on his night stand.  After the two men left the apartment, Ms.
Meyers called for help.

Police were called
to the scene at Rolling Creek Drive and an investigation into the robbery
began.  Deputy Paul Boyd was dispatched
to the apartment and was told by Ms. Meyers that her car was missing.  Deputy Boyd placed a broadcast over the radio
describing the vehicle missing as a red Ford Probe.  Deputy Boyd determined forced entry was made
by breaking a rear window on the lower floor of the apartment which led into
the kitchen, even though the apartment back door was left unlocked.








Several hours
later, Deputy Almendarez was working on a traffic stop on Rolling Creek Drive
when a witness told him that a man in a red car had broken into his friend=s truck.  The witness led the deputy to the car, a red
1994 Ford Probe.  A black male about
five-ten or six feet tall wearing dark clothing was standing beside the
car.  When the deputy approached, the
black man fled on foot.  Deputy
Almendarez pursued the man and during the foot chase, a wallet fell from the
fleeing man=s back
pocket.  The deputy retreived the wallet
but lost the fugitive in nearby woods. 
Deputy Almendarez had radioed other officers about the chase and a
police perimeter had been set up around the woods and a number of officers
began searching for the fugitive.

Officer David
Thomas with the Houston Police Department K-9 unit arrived at the scene.  Officer Thomas used K-9 police dog, Rudy, to
track the fugitive and eventually the K-9 unit found the fugitive crawling in
the woods and he was captured.  Officer
David Thomas identified the man as the Appellant.

The red Ford Probe
that Appellant had fled from belonged to Ms. Meyers.  An inventory search of the car found the
following items within the vehicle:  a
blue towel, a blue Outback backpack which contained a .38 special revolver, a
Pioneer car stereo, flashlight and two batteries, screwdriver, cigarette
lighter, Kenwood remote and Rockford Fosgate remote, 5 grape suckers, a cell
phone, and $3.89.  They attempted to
obtain fingerprints from the car, but there were none.

At trial,
Appellant presented three alibi witnesses who testified Appellant could not
have committed the robbery because he was at a friend=s
house.  The first witness was Ms.
Shandreka Russell.  Ms. Russell has known
Appellant for seven years and she is the mother of their child.  Ms. Russell testified she met with Appellant
at a friend=s house
at around 1 p.m. and she left at approximately 2:45 p.m. to pick up her
daughter from school.  She stated she
went to visit with Appellant because she needed some money for their
child.  








The second witness
testifying on Appellant=s
behalf was Ms. Tiffany Merchant. 
Ms. Merchant has known Appellant for ten years and she has been
dating Appellant for a year and a half. 
She stated she called Appellant during her lunch break at around 1:10
p.m. while Appellant was over at his friend=s
house.  The conversation did not last
long because Ms. Merchant was upset Ms. Russell was going over to meet
with Appellant.  At approximately 1:25
p.m., Ms. Merchant telephoned Appellant again to see if Ms. Russell was still
there and she was.  Finally, Ms. Merchant
called Appellant a third time at around 1:40 p.m. to see if Ms. Russell
was still visiting with Appellant, and she testified she could hear Ms. Russell
in the background.

The last witness
Appellant presented was his mother, Renita Oliver.  Ms. Oliver stated at approximately 12:45
p.m., she went over to Appellant=s
friend=s house
where Appellant had been staying the last two weeks.  Prior to living in his friend=s house, Appellant had been living with
his mother but he had to move out due to a fire that occurred in his mother=s home. 
Ms. Oliver went to pick up Appellant at his friend=s house so he could help her and her
sister move some things.  Ms. Oliver
testified Appellant did not leave with her because his friend had left the
apartment and he was there waiting for his friend=s
kids to arrive from school or daycare and for Ms. Russell to arrive.  Ms. Oliver did not stay long with
Appellant.  She stated she left Appellant
at around 1:15 p.m. or 1:30 p.m. which is when she saw Ms. Russell arriving in
the apartment parking lot.

SUFFICIENCY
OF THE EVIDENCE








Appellant presents
two issues challenging the legal and factual sufficiency of his conviction for
aggravated robbery.  The elements of
aggravated robbery are:  (1) the
Appellant; (2) in the course of committing a theft; (3) with the intent to
obtain and maintain control of property; (4) knowingly and intentionally; (5)
threatened or placed another in fear of imminent bodily injury or death; and
(6) used or exhibited a deadly weapon.  Fortenberry
v. State, 889 S.W.2d 634, 636 (Tex.App.--Houston [14th Dist.] 1994, pet.
ref=d); Robinson v. State, 596
S.W.2d 130, 132 (Tex.Crim.App. 1980); Tex.Penal
Code Ann. '
29.03(a)(2)(Vernon 2003). Appellant contends his conviction should be reversed
because the State failed to provide sufficient evidence identifying him as the
robber.

Standards
of Review

In reviewing the
legal sufficiency of Appellant=s
conviction, we must view the relevant evidence in the light most favorable to
the verdict and determine whether any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); Johnson v. State,
23 S.W.3d 1, 7 (Tex.Crim.App. 2000).  The
standard of review is the same for convictions based on direct or
circumstantial evidence.  Guevara v.
State, 152 S.W.3d 45, 49 (Tex.Crim.App. 2004).  Because the trier of fact is in the best
position to review the evidence first hand, we must give due deference to the
trier of fact=s
determinations regarding the weight and credibility of the evidence.  Matson v. State, 819 S.W.2d 839, 843
(Tex.Crim.App. 1991), citing  Moreno
v. State, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988); Johnson, 23
S.W.3d at 9; Tex.Code Crim.Proc.Ann.
art. 38.04 (Vernon 1979).








In reviewing the
factual sufficiency of the evidence, we must determine whether considering all
the evidence in a neutral light, the jury was rationally justified in finding
guilt beyond a reasonable doubt.  Zuniga
v. State, 144 S.W.3d 477, 484 (Tex.Crim.App. 2004). Evidence can be
factually insufficient if the evidence supporting the verdict, considered by
itself, is too weak to support the finding of guilt beyond a reasonable doubt,
or contrary evidence is so strong that guilt cannot be proven beyond a
reasonable doubt.  Zuniga, 144
S.W.3d at 484-85.  Our evaluation should
not intrude upon the fact finder=s
role as the sole judge of the weight and credibility given to any witness=s testimony.  Cain v. State, 958 S.W.2d 404, 407
(Tex.Crim.App. 1997).  We will not set
aside the judgment unless the evidence supporting the verdict is so weak as to
be clearly wrong and manifestly unjust.  Zuniga,
144 S.W.3d at 481.  A clearly wrong and
manifestly unjust verdict occurs where the jury=s
finding Ashocks
the conscience@ or Aclearly demonstrates bias.@ 
Id.  An opinion addressing
factual sufficiency must include a discussion of the most important and
relevant evidence that supports the appellant=s
complaint on appeal.  Sims v. State,
99 S.W.3d 600, 603 (Tex.Crim.App. 2003). 

Legal
Sufficiency[1]








Appellant contends
there is legally insufficient evidence to establish Appellant=s identity as the robber because the
victims of the crime did not have an adequate opportunity to view the robber,
the State failed to present evidence Appellant was inside complainant=s residence, there was no evidence
proving which of the two robbers was Appellant, and Appellant=s possession of Afruits
of the robbery@ was not
sufficient to prove Appellant=s
identity as the robber.

The two eye
witnesses to the robbery were the victims Christine Meyers and Ashton
Posey.  At the time the robbery occurred,
both victims were sleeping and they had their overhead lights turned off.  Although the lights were off, the victims
were not sleeping in complete darkness because both of their bedroom blinds
were half-way open, which provided the afternoon sunlight to shine into their
rooms.

Ms. Meyers had
enough light to see Appellant to make an in-court identification of Appellant
as the robber with the gun.  Ms. Meyers
testified she saw Appellant for about a second and half or two seconds and then
she closed her eyes because she was afraid he would do something to her if he
knew she had seen him.  When asked
whether those few seconds were enough for her to remember the face of
Appellant, she stated it did not take her a long time to memorize the face of
the person who put a gun to her face. 
Specifically she said, AI=ve never had a gun to my face before,
so it kind of bogs my memory.@








Although Ms.
Meyers was able to see Appellant=s
face, Mr. Posey did not.  He stated the
only thing he saw was the eye structure and eye color of the suspect as well as
his figure.  Even though Mr. Posey did
not see Appellant=s face,
the testimony of Ms. Meyers is legally sufficient evidence Appellant was the
robber who held the gun to her head and was inside her apartment.  Welch v. State, 993 S.W.2d 690, 694
(Tex.App.--San Antonio 1999, no pet.); Ford v. State, 794 S.W.2d 863,
867 (Tex.App.--El Paso 1990, pet. ref=d);
Karpeal v. State, 628 S.W.2d 520, 524 (Tex.App.--Fort Worth 1982, pet.
ref=d)(in-court identification of defendant
is sufficient to sustain conviction).

In addition,
Appellant was found in possession of Ms. Meyers=
recently stolen vehicle.  When a
defendant is found in possession of recently stolen property and he or she does
not offer an explanation for how they attained the property, a fact finder may
draw an inference of guilt.  Louis v.
State, 159 S.W.3d 236, 246-47 (Tex.App.--Beaumont 2005, pet. ref=d), citing Hardesty v. State,
656 S.W.2d 73, 76 (Tex.Crim.App. 1983); Girard v. State, 631 S.W.2d 162,
164 (Tex.Crim.App. 1982)(recent and unexplained possession of robbery loot is
sufficient evidence of guilt.).  The fact
finder may also infer guilt when a defendant is at or near the scene of the crime
and thereafter flees from officers.  Cawley
v. State, 310 S.W.2d 340, 342 (Tex.Crim.App. 1983); Hardesty, 656
S.W.2d at 78.








Although Appellant
was found in possession of Ms. Meyers=
vehicle by Deputy Almendarez, Appellant asserts the evidence failed to prove
his identity as the robber because Deputy Almendarez did not identify Appellant
at trial.  At trial, Deputy Almendarez
could not identify Appellant as the suspect he chased on September 12.  The deputy stated he could not identify Appellant
at trial because it had been a long time since the day he saw him.  Although Deputy Almendarez could not identify
Appellant on the day of the trial, he did testify the suspect who fled from the
Ford Probe and dropped his wallet was the same suspect who ran into the woods
and he was the same man brought out of the woods by police officers.  The deputy also testified the wallet the
suspect dropped contained Appellant=s
license.  Even though Deputy Almendarez
could not make an in-court identification of Appellant, his testimony still
established Appellant was the suspect he chased from Ms. Meyers= stolen vehicle on September 12.

Moreover, the jury
heard testimony from Ms. Meyers that she retained possession of her keys and
her vehicle prior to the robbery.  Ms.
Meyers testified before she went to bed, she placed her wallet and the keys to
her car underneath the table stand next to her bed.  After the two robbers left Ms. Meyers= apartment, her keys, her wallet, and
car were missing.  Based upon
Ms. Meyers=
testimony, it would have been reasonable for the jury to infer Appellant
acquired access to Ms. Meyers=
keys by stealing them in the robbery.

 The evidence also established Appellant was
found in possession of Ms. Meyers=
car only three hours after the robbery and in the same vicinity.  The time frame from the initial robbery of
Ms. Meyers and Mr. Posey at 1:30 p.m. to Appellant=s
fleeing from Deputy Almendarez at approximately 4:30 p.m. was a relatively
short three hours.  In addition to being
a small time frame, the Appellant was apprehended in the same area where the
aggravated robbery occurred.  The
aggravated robbery occurred on Rolling Creek Drive which was off of FM 1960 and
both Deputy Almendarez and Officer Thomas testified Appellant was apprehended
in the wooded area of FM 1960.  Based
upon this evidence, the jury could have reasonably concluded Appellant was
guilty because he was in possession of recently stolen property, the robbery
and Appellant=s arrest
were in close proximity of each other, and he fled from Deputy Almendarez.  Viewing the evidence in the light most
favorable to the prosecution, the jury could have found beyond a reasonable
doubt Appellant committed the robbery. 
Appellant=s Issue
One is overruled.

Factual
Sufficiency








As previously
stated, Ms. Meyers was able to distinctly identify Appellant in court.  The evidence in the record did indicate Mr.
Posey could not adequately identity Appellant because he did not see his
face.  Any inconsistencies within the
testimony of the victims is weighed by the trier of fact.  Johnson, 23 S.W.3d at 8.  Appellant cites Johnson v. State for
its holding that even with an in-court identification by the victim, the Court
of Appeals and the Court of Criminal Appeals found there was factually
insufficient evidence.  Johnson v.
State, 978 S.W.2d 703, 707 (Tex.App.--Corpus Christi 1998), affirmed by
Johnson, 23 S.W.3d at 12.

Appellant urges
this Court to consider the ruling of Johnson as a similar situation to
Appellant=s.  In Johnson, the victim was apprehended
in her apartment parking lot after coming home from work and she was
raped.  Johnson, 978 S.W.2d at
705.  The man who raped her wore a black
turtle neck, a ski mask, and gloves.  Johnson,
978 S.W.2d at 705.  He forced the victim
to drive them outside the city where there was no artificial light and the area
was very dark.  Id.  He then proceeded to bind her, blindfold her,
and then raped her.  Id.  The victim made an in-court identification
where she stated the following:

Q:        Do you believe or do you know whether or
not that is the man that sexually assaulted you in November of 1992?

 

A:         I cannot tell a hundred percent that it
is him, but I am positive.

 

Q:        I=m
sorry?

 

A:         I=m
positive that it is him.

 

Q:        But you are not a hundred percent
positive?

 

A:         No sir.

 

Q:        Why can=t
you be a hundred percent positive?

 

A:         It was dark. I blindfolded [sic].  I was so scared.  He had a ski mask on most of the time.  I didn=t
take a look at him very good.  I was just
so scared.  I don=t
think I would have a chance to identify him. 
I thought I was going to die.  








                                                              .               .               .

 

Q:        Well do you remember if it was a short
time or a long time that he had the mask off?

 

A:         I believe that he didn=t have the mask on while he drived
[sic] back into town but I didn=t
take a look at him.  

 

Q:        But the person who did this to you did
not have a mask on for the entire trip back into town?

 

A:         I believe so.

 

Q:        You just didn=t
look at him?

 

A:         I didn=t
look at him.

 

Johnson, 978 S.W.2d at 706.

The court in Johnson
held the evidence was factually insufficient because the in-court
identification was not clear and unequivocal and the other evidence presented
by the State against the defendant could have applied to many other
people.  Johnson, 978 S.W.2d at
707.  The other evidence the State used
to incriminate Johnson was DNA testing showing he was in a group of 8.5 percent
of the black population to match the DNA samples of semen taken from the
victim, he had lived in the area where the rape had occurred, he was not circumcised,
after his arrest he escaped from jail, and he lived in an apartment a short
distance from the victim.  Johnson,
978 S.W.2d at 706-07.

As previously
discussed, Ms. Meyers made a clear in-court identification of Appellant.  She stated in her testimony:  

Q:        And was there light enough for you to
observe the face of the person that came in with the gun?

 

A:         Yes, sir.








Q:        And describe for us what you saw about
the face when you saw it as the person came into your room.

 

A:         I saw the upper half of the face.

 

Q:        Describe it for us.  Was it a man or woman?

 

A:         It was a male about the size of my
boyfriend. So, about six, six-one, a little bigger set. 

 

Q:        Was he white or black?

 

A:         He was black.

 

Q:        What was his hair like?

 

A:         Short.

 

Q:        Do you remember seeing any facial hair
on him?

 

A:         I don=t
remember.  I saw the top half before I
closed--because I was kind of looking at the gun.  And then right above it was his face so--

 

Q:        From your vantage point, like in your
bed, the gun was blocking the lower half of his face?

 

A:         Yes.

 

                                                              .               .               .

 

Q:        Okay. 
The defense also brought up that you only saw the face for one-and-a
half to two seconds.  How long did it
take you to memorize the face of the person who put a gun to your face?

 

A:         Doesn=t
take long.  I=ve
never had a gun in my face before, so it kind of bogs my memory.

 

                                                              .               .               .

 

Q:        Ms. Meyers, going back to September 12th
of 2003, do you see a person in the courtroom today that was in your bedroom
with a gun pointed at your head about 1:30 on September 12th, 2003?

 








A:         Yes, sir.

 

Q:        And would you please point at that person
and tell us what he=s
wearing?

 

A:         Him, and he was wearing dark colors.

 

Q:        Tell us what he=s
wearing now.

 

A:         The tan shirt with a blue tie.

 

Q:        And where is he sitting?

 

A:         To the right of me.

 

Unlike the victim in Johnson,
Ms. Meyers made a clear and unequivocal in-court identification of
Appellant.  The testimony by the victim
in Johnson stated she was not one-hundred percent sure the defendant was
her attacker.  She stated she was unsure
because it was dark outside and she was so terrified she did not want to look
at her attacker.  This is not what
occurred in the case at hand.  Here, Ms.
Meyers testified she had plenty of light to see the upper half of the robber=s face. 
She also stated she memorized what he looked like and her in-court
testimony shows she clearly pointed out Appellant as the robber who was in her
apartment on September 12.








Moreover, the
holding in Johnson is not similar to the case at hand because the
circumstances surrounding Appellant=s
arrest could not have applied to many people not associated with the
robbery.  The evidence used against
Johnson were circumstances that could have applied to anyone.  Unlike Johnson, Appellant was found a
few hours later in the same area as the robbery and he was in possession of Ms.
Meyers= stolen
vehicle which contained a weapon the victim testified was the one used in the
robbery.  When asked whether Ms. Meyers
owned the gun found inside her car, she testified she did not own the gun.  Ms. Meyers was able to describe the gun in
court as a revolver that had a wood or wood-grained handle.  She further explained she knew the gun used
in the robbery was a revolver because the barrel and everything else on the
weapon is a lot higher up than a semi-automatic.  Ms. Meyers testified she knew this because
her brother is a police officer and he carries an automatic weapon.  Based upon the evidence Appellant held in his
possession, these circumstances lend themselves to his involvement in the
robbery.

Lastly, Appellant
asserts his witnesses presented enough evidence of an alibi that the State
could not have proven beyond a reasonable doubt Appellant was the robber.  All three witnesses testified Appellant was
at a friend=s house
at the time the robbery occurred. 
Ms. Russell testified she was with Appellant the entire time when
the robbery was taking place, Ms. Oliver testified she saw her son a few
minutes before the robbery occurred at his friend=s
house, and Ms. Merchant testified she was on the phone with Appellant during
the time the robbery occurred.  However,
in addition to all three testifying Appellant was at his friend=s house, two of the witnesses, Ms.
Russell and Ms. Oliver, also admitted they never told the Sherriff=s Department or the Harris County DA=s office about Appellant=s whereabouts before testifying at
Appellant=s
trial.  From the time the robbery
occurred on September 12 to the time Appellant had his trial was a period a
little over nine months.  Although no
testimony was elicited from Ms. Merchant as to whether she notified the
authorities prior to trial about Appellant=s
alibi, she did testify that she did not want to see her boyfriend
convicted.  Specifically she stated:

Q:        Would you say whatever you need to to
avoid him getting convicted?

 

A:         Probably so. 

 








The credibility of
witness testimony is determined by the trier of fact.  The jury in this case could have believed
all, some, or none of the witness testimony. 
Chambers v. State, 805 S.W.2d 459, 461 (Tex.Crim.App. 1991).  Even though Appellant presented alibi
witnesses, we leave the credibility of their testimony to the jury=s determination.  Clewis, 922 S.W.2d at 133.  Based upon all of the evidence, we find there
was sufficient factual evidence to convict Appellant of aggravated
robbery.  Appellant=s Issue Two is overruled.

We affirm the
trial court=s
judgment. 

 

September
29, 2005

DAVID WELLINGTON
CHEW, Justice

 

Before Barajas, C.J., McClure, and Chew, JJ.

 

(Do Not Publish)











[1]
In both legal and factual insufficiency arguments, Appellant references Ashton
Posey=s
testimony that he was shown a photographic lineup.  Specifically, Appellant argues the State
failed to provide any evidence of the identification procedure or any exhibits
about what photographs were shown to the victims.  At trial, Ashton Posey testified to the
following:

 

Q:        Did you give the description of the
person=s eye
structure to the police?

 

A:         No, ma=am.  They just showed me a photo shoot.

 

Mr. Posey=s statement was the only reference in
the record regarding any type of photo shoot and the State never admitted any
evidence of a photo shoot.  Appellate
court review is limited to the confines of the record.  Salazar v. State, 5 S.W.3d 814, 816
(Tex.App.--San Antonio 1999, no pet.); Burns v. State, 761 S.W.2d 486,
487 (Tex.App.--Corpus Christi 1988, pet. ref=d);
Jones v. State, 564 S.W.2d 718, 721 (Tex.Crim.App. 1978).  Because the State did not admit the evidence
into the record and this Court is bound by the record, we cannot review
Appellant=s
argument regarding the lack of evidence the State failed to introduce.