Affirmed and Memorandum Opinion filed October 2, 2007








Affirmed and Memorandum Opinion filed October 2, 2007.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00754-CR

____________

 

GARY BERNARD NORWOOD, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 338th
District Court

Harris County, Texas

Trial Court Cause No. 1038313

 



 

M E M O R A N D U M   O P I N I O N

A jury found appellant, Gary Bernard Norwood, guilty of the
felony offense of robbery and assessed punishment at confinement for life in
the Institutional Division of the Texas Department of Criminal Justice.  See
Tex. Penal Code Ann. ' 29.02 (Vernon 2003).  Appellant appeals
his conviction, and in his sole point of error, he contends the evidence is
factually insufficient to sustain the conviction for robbery.  We affirm.  

 








Factual and Procedural Background    

On the afternoon of July 30, 2005, a man wearing a dark
colored Sean-John t-shirt, a motorcycle helmet, sunglasses and a do-rag,
entered the Prosperity Bank at 15050 Fairfield Village Drive in Cypress, Harris
County, Texas and announced he was robbing the bank.  The robber ordered
everyone to hit the floor and threatened to shoot them if they did not comply. 
He then demanded that Jennifer Flores, a Prosperity Bank employee, fill up a
cardboard box with money.  Feeling Flores was going too slow, the robber jumped
over the teller counter and instructed Flores to hurry.   In addition to two
drawers of money, Flores was able to slip bait money into the robber=s box.[1] 
After Flores filled the box, the robber jumped back over the counter and left
the bank.           

The police were contacted through the use of a silent panic
alarm and arrived after the suspect fled the bank.  Maureen Murphey, an FBI
special agent on bank robbery standby duty, also arrived at the scene.  Murphey
testified she interviewed each witness separately, received a copy of the bait
money taken during the robbery, and then canvassed the neighborhood.  While
canvassing the surrounding area, Murphey located a dark blue Sean-John t-shirt in
the parking lot of the Fairfield Baptist Church just less than a mile from the
bank.  Murphey testified one of the witnesses told her the suspect left the
bank and turned to the right heading toward the side parking lot.  She also
testified that another officer discovered a black do-rag near the side parking
lot.  Both the shirt and the do-rag were collected as evidence.  On
cross-examination, Murphey testified none of the witnesses actually saw the
robber throw the do-rag to the ground.








During the investigation of the robbery, Robert Sharp, an
FBI agent with the bank robbery task force, developed a potential suspect. 
Sharp testified he received an anonymous tip through Crime Stoppers that
appellant was the robber.  After receiving the tip, Sharp put together a photo
spread, which included appellant=s picture and five
other pictures.  Sharp testified he properly admonished each witness and then
showed the photo spread to both Lea Babb, a bank employee present at the time
of the robbery, and Flores.  Neither witness could positively identify the
robber.  After the photo spread, Sharp, with the help of Detective Demetrius
Lemonitsakis of the Harris County Sheriff=s Department,
conducted a videotape lineup, which included appellant and four other men. 
Appellant=s lawyer was present at the time the lineup was
conducted.  Sharp showed the videotape lineup to Babb and Flores, and once again,
they were unable to positively identify any of the lineup participants as the
bank robber.  However, Sharp also showed the videotape lineup to Cameron
Giddings, another eyewitness, and Giddings identified appellant as the bank
robber.  Sharp did not show the photo spread or videotape lineup to any other
witnesses.   

On August 4, 2005, Officer Robert Pali of the Houston
Police Department arrested appellant.  After taking appellant into custody,
Pali conducted an inventory of the property in appellant=s vehicle and
located $1,017 in cash in the front seat of the vehicle underneath a wallet. 
Pali testified the wallet belonged to appellant.  He also testified once the
money was discovered, he immediately turned it over to Lemonitsakis. 
Lemonitsakis then turned the money over to Sergeant David Ryza with the Houston
Police Department Robbery Division and asked him to compare the bills to the
bait list provided by Murphey. Ryza testified five of the twenty-dollar bills
provided to him by Lemonitsakis matched bills on the bait list.  On
cross-examination, Ryza testified he made no inquiries into whether the bait
money had been disturbed before the bank robbery or whether the bait money list
was up-to-date. 








During trial, the State called four eyewitnesses to the
stand:  three bank customers and a bank employee.  Flores was the bank employee
who turned the money over to the robber.  Flores testified the robber was an
African-American man who wore a dark-colored helmet, a black or navy blue
Sean-John shirt, and sunglasses.  Flores also testified she never got a good
look at the man because she was too scared to look at him for any length of
time.  She testified the reason she was so scared was because the robber asked
her if she had ever been shot before and she took this to mean he would shoot
her.  Even after the robber jumped over the counter and stood next to Flores,
she testified she did not look at him very closely or for very long.  Flores
stated A[i]f I looked at
him too long, I would try to remember what he looked like and it scared me.@  During
cross-examination, Flores admitted she did glance at the robber a few times but
also said she did not concentrate on him too much.  Flores was unable to
positively identify anyone in both the photo spread and videotape lineup.

Mary Katherine Graves was a customer in the bank the day
the robbery occurred. Graves testified as the robber approached her, she turned
her head away from him.  When the robber demanded everyone lie on the floor,
Graves said she had a difficult time getting down because of her age.  While
Graves was attempting to get on the floor, she testified she glanced at the
robber and saw what appeared to her was a pistol grip.  She also stated once
she was able to get to the ground, she crawled underneath a table and was no
longer able to see the robber.  Graves testified the robber wore a silver
helmet with a black design on the sides, a short-sleeved t-shirt, and dark
glasses but also said she was unable to get a good look at his face.  The
police never asked Graves to make an identification of the robber, but she
admitted at trial she would not be able to make an identification based on what
she saw that day.  Graves stated on cross-examination she might have been able
to identify the robber=s voice, but she was never asked to do so.








Cameron Giddings,
a high school student, was also a customer in the bank the day the robbery
occurred.  Giddings testified the robber was a light-skinned, African-American
man who wore a black Sean-John short-sleeve shirt, a backpack, a black pair of
tennis shoes or urban wear shoes, black pants, a motorcycle helmet, a pair of
black sunglasses, and a black do-rag.  Giddings said he initially thought the
man was joking, but once he realized it was real, he began paying close
attention to the physical features of the robber.  Giddings testified:

The first thing, I guess, I did was
look right at him.  I can=t take my eyes off him.  It was
surreal what was going on.  I was B in that moment, I just wanted to keep watching.  I just
had my eyes locked on him, picking up every detail, I guess.

Giddings
stated he could see the man=s nose and part of his mouth and also the
skin tone of the man=s forearm.  He said the way the man=s forearm hair
contrasted with his skin tone stuck out to him.  He also testified he saw a
silver metal object which appeared to him to be the butt of a pistol.  Giddings
was later presented a videotape lineup at his home and identified appellant as
the robber because of his nose, mouth, arm, and skin tone.  The State asked
Giddings during trial how positive he was the same person in the lineup was the
person who robbed the bank and Giddings testified he was Aone hundred
percent@ positive. 
Giddings also made an in-court identification of appellant and stated he was Aone hundred
percent@ positive
appellant was the man who robbed the bank.  Giddings admitted on
cross-examination the main reason he could identify appellant was because of
his right arm, which Giddings thought looked unique.  He also testified on
cross-examination that he never said the robber had his finger on the trigger
of the pistol, but the defense impeached the witness by showing an
inconsistency in his testimony regarding that statement.  In a previous
statement, Giddings did state the robber had his finger on the trigger, but it
was also established this statement was made the day of the robbery and
Giddings never had a second chance to look at it nor did he swear to it.  








Edward Kennedy, another customer in the bank the day of the
robbery, was the fourth eyewitness who testified for the State.  Kennedy
testified the robber was a tall, dark-complected gentleman who had on a
t-shirt, a black motorcycle helmet, sunglasses, blue rayon pants, and tennis
shoes.  Kennedy also testified he was standing right next to Giddings when the
robber entered the bank and when the robber approached him, he got on the
floor.  Kennedy stated he never got a good look at the robber because he did
not want to agitate him, but from where Kennedy was kneeling he had a direct
view of Giddings.  When asked what Giddings was doing, Kennedy stated A[h]e was basically
looking right at the person.  Had kind of this like grin on his face.  I B I don=t know if he was
nervous or what, but he was staring right at the whole thing.@  During
cross-examination, Kennedy admitted appellant appeared to be a light-skinned
African American, but also stated he used the description Adark complected@ because the man
was dark compared to himself.  

The State also called Mark Powell from the Harris County
Medical Examiner=s Office who presented the DNA evidence. 
Powell testified he examined a t-shirt and do-rag found during the
investigation of the robbery for possible DNA evidence.  Powell was unable to
find any DNA on the t-shirt, but he was able to develop a partial DNA profile
from the do-rag.  Powell compared the partial DNA profile from the do-rag to a
full DNA profile taken from appellant.  From the DNA comparison made, Powell
testified appellant could not be excluded as a contributor of the DNA and that
one in sixty black males would have the same profile.  Powell admitted on
cross-examination the population group used to generate the statistics was only
around 400 people, but he also stated a sample of only 400 people is still
highly accurate.  Powell further testified on cross-examination he could not
unequivocally say the DNA belonged to appellant.  

The defense called only one witness to the stand:  Tammy
Norwood, appellant=s sister.  Ms. Norwood testified appellant
worked at the Greater Houston Repair Service and he made approximately $1,100
every two weeks.

Appellant was charged with aggravated robbery, but the jury
found appellant guilty of the lesser offense of robbery.  Because the charge
was enhanced with two prior felony convictions, the jury sentenced appellant to
confinement for life.  This appeal followed.








Discussion 

A.      Is the
Evidence Factually Sufficient to Support Appellant=s Conviction? 

In his sole issue, appellant contends the evidence is
factually insufficient to sustain the jury=s verdict.[2] 
Specifically, appellant contends the evidence is factually insufficient to
prove appellant was the perpetrator of the robbery because only one out of the
four eyewitnesses identified appellant, Giddings did not have adequate time to
observe the robber, and there was evidence contradicting Giddings=s eyewitness
identification.  In addition, appellant contends the evidence is insufficient
because the DNA evidence produced by the State was only a partial collection
and the State failed to connect appellant to the vehicle in which the bait
money was found.      

1.       Standard
of Review

In a
factual sufficiency review, we consider all the evidence in a neutral light.  Prible
v. State, 175 S.W.3d 724, 730B31 (Tex. Crim. App. 2005).  The
evidence may be factually insufficient in two ways.  Id. at 731.  First,
when considered by itself, evidence supporting the verdict may be so weak the
verdict is clearly wrong and manifestly unjust.  Id.  Second, where the
evidence both supports and contradicts the verdict, the contrary evidence may
be strong enough that the beyond-a-reasonable-doubt standard could not have
been met.  Id.  In conducting a factual sufficiency review, we must
employ appropriate deference so that we do not substitute our judgment for that
of the fact finder.  Jones v. State, 944 S.W.2d 642, 648 (Tex. Crim.
App. 1996).  Our analysis must consider the evidence appellant claims is most
important in allegedly undermining the jury=s verdict.  Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003). 








2.       The
Evidence is Factually Sufficient 

Initially, we address appellant=s contentions
regarding the eyewitness identification.  Appellant argues Giddings was the
only eyewitness out of four who was able to identify appellant as the
perpetrator.  On the day of the robbery, Giddings gave a statement to an
officer describing the robber, he later made a positive identification of
appellant in a videotape lineup, and he made a positive identification of
appellant during the trial.  When asked how sure he was, Giddings testified he
was Aone hundred
percent@ positive.  The
inability of the other eyewitnesses to make a positive identification of
appellant does not prove appellant was not the robber.  See Santos v. State,
116 S.W.3d 447, 459 (Tex. App.CHouston [14th Dist.] 2003, pet. ref=d).  The only
other eyewitness the police asked to make an identification was Flores, and she
testified she was too scared to look at the robber for very long because she
did not want to remember what he looked like.  In addition, the police never
asked Graves or Kennedy to make an identification, but Graves admitted at trial
she was not able to make an identification because she did get a good look at the
robber. Kennedy also admitted he did not get a very close look at the robber=s face.  Giddings=s testimony
standing alone is sufficient to support appellant=s conviction.  See
Harmon v. State, 167 S.W.3d 610, 614 (Tex. App.CHouston [14th
Dist.] 2005, pet. ref=d) (stating complainant=s testimony
standing alone was sufficient to support appellant=s conviction);
Batts v. State, 673 S.W.2d 666, 668 (Tex. App.CSan Antonio 1984,
no pet.) (stating complainant=s testimony standing alone was sufficient
to sustain a robbery conviction). 








Appellant also contends Giddings did not have adequate time
to observe the robber and the other eyewitnesses provided contradictory
evidence regarding the appearance of the robber.  Appellant=s contention
contravenes the well-established standard of review for a jury=s evaluation of
the credibility of witnesses. The jury is the sole judge of the facts, the
credibility of the witnesses, and the weight to be given the evidence.  Wyatt
v. State, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000); Beckham v. State, 29
S.W.3d 148, 151 (Tex. App.CHouston [14th Dist.] 2000, pet. ref=d). In addition,
the jury may believe or disbelieve all or part of any witness=s testimony.  Jones
v. State, 984 S.W.2d 254, 258 (Tex. Crim. App. 1998) (en banc).
Reconciliation of any conflicts in the evidence falls within the exclusive
province of the jury.  Heiselbetz v. State, 906 S.W.2d 500, 504 (Tex.
Crim. App. 1995) (en banc). Thus, the jury was entitled to believe Giddings=s testimony and
make reasonable inferences therefrom, regardless of the time Giddings had to
observe the robber or the conflicting testimony, if any, given by the other
eyewitnesses.  

 Next, appellant argues the evidence is factually
insufficient because the DNA evidence introduced during trial did not
conclusively prove appellant was the contributor of the DNA found on the
do-rag.  While it is true the DNA evidence failed to conclusively corroborate
appellant=s guilt, it does not weigh against the verdict.  See
Tinker v. State, 148 S.W.3d 666, 669 (Tex. App.CHouston [14th
Dist.] 2004, no pet.) (holding a lack of DNA or other physical evidence did not
cause the evidence to be factually insufficient).  The lack of physical or
forensic evidence is a factor for the jury to consider in weighing the
evidence.  Lee v. State, 176 S.W.3d 452, 458 (Tex. App.CHouston [1st
Dist.] 2004), aff=d, 206 S.W.3d 620
(Tex. Crim. App. 2006).








Last, appellant contends the evidence is factually
insufficient because the State failed to produce evidence which connected
appellant to the vehicle in which the bait money was found.  This argument is
without merit because the record reflects the State did connect the vehicle to
the appellant.  Pali, the arresting officer who conducted the inventory of the
vehicle, testified he took appellant into custody and then inventoried the
property in appellant=s vehicle.  Pali also testified he found
the cash in the front seat of appellant=s vehicle.  On cross-examination,
the defense never questioned Pali regarding ownership of the vehicle nor did
the defense put on any witnesses to controvert Pali=s testimony that
the vehicle belonged to appellant.  Again, the jury is the sole judge of the
facts, the credibility of the witnesses, and the weight to be given the
evidence. Wyatt, 23 S.W.3d at 30; Beckham, 29
S.W.3d at 151.  Thus, the jury was entitled to believe Pali=s testimony and make
reasonable inferences therefrom.        

Finally, appellant compares this case to Johnson v.
State, 978 S.W.2d 703 (Tex. App.CCorpus Christi
1998), aff=d, 23 S.W.3d 1 (Tex. Crim. App.
2000) and argues we should reach the same conclusion.  In Johnson, the
Corpus Christi court of appeals found the evidence factually insufficient to
support a sexual assault conviction primarily because the in-court identification
of the appellant Awas not clear and unequivocal.@  Johnson,
978 S.W.2d at 707.  At trial, the victim in Johnson identified the
appellant in court as her assailant and stated she was positive but not one
hundred percent positive.  Id. at 706.  When asked why she was not one
hundred percent positive, she stated A[i]t was dark.  I
[was] blindfolded.  I was so scared.  He had a ski mask on most of the time.  I
didn=t take a look at
him very good.  I was just so scared.@  Id.  In
this case, however, Giddings made two clear and unequivocal identifications. 
Giddings not only stated he was Aone hundred
percent@ positive about
his in-court identification but he also stated he was Aone hundred
percent@ positive about
his videotape lineup identification as well.  In addition, Giddings testified
he could not take his eyes off of the robber and wanted to pick up every
detail.  We, therefore, do no find Johnson similar to this case.

After neutrally examining all the evidence, we hold the
evidence supporting the verdict is not so weak that the verdict is clearly
wrong and manifestly unjust; nor was the contrary evidence so strong that the
beyond-a-reasonable-doubt standard could not have been met.  The evidence is
factually sufficient to support appellant=s conviction. 
Accordingly, we overrule appellant=s sole issue.

 

 

 








Conclusion         

Having overruled appellant=s sole issue on
appeal, we affirm the judgment of the trial court.

 

 

 

 

/s/      John S. Anderson

Justice

 

 

 

                                                                                                                             

Judgment rendered
and Memorandum Opinion filed October 2, 2007.

Panel
consists of Chief Justice Hedges and Justices Anderson and Seymore.

Do Not
Publish C Tex. R. App. P.
47.2(b).









[1]  Bait money is a specific strap of money put in each
teller=s drawer, and it is only given out in the course of a
robbery.  Prosperity Bank=s procedure was to make copies of the bait money and
keep the copies in the vault.  If money is taken during a robbery and
subsequently recovered by the police, it is compared to the bait money list to
see if any of the serial numbers on the bills recovered match the serial number
of the bills on the list.   





[2]  As a factual sufficiency review begins with the
presumption that the evidence supporting the jury=s verdict is legally sufficient, and since appellant challenges only
the factual sufficiency of the evidence, he effectively concedes the evidence
is legally sufficient to sustain the conviction.  See Santellan v. State,
939 S.W.2d 155, 164 (Tex. Crim. App. 1997); Clewis v. State, 922 S.W.2d
126, 134 (Tex. Crim. App. 1996).