Harvey Allan SMITH, Appellant,

v.

The STATE of Texas, Appellee.

No. 53085.

Court of Criminal Appeals of Texas.

Nov. 2, 1977.

**300**

Donald R. Scoggins, Dallas, for appellant.

Henry Wade, Dist. Atty., John H. Hagler, Kelly Loving and Bob Hinton, Asst. Dist. Attys., Dallas, Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

This is an appeal from a conviction for murder. The trial court assessed punishment at life imprisonment in the Texas Department of Corrections.

The sufficiency of the evidence is not challenged. The record reflects that the appellant and the deceased were identified as being the driver and passenger respectively in a minor one-car accident in Dallas during the early morning hours of August 23, 1975.

Some hours later, a witness observed a car parked in a field next to his house. Upon hearing a scream, he telephoned the police. Officer W. E. Boone of the Garland Police Department responded to the call. When he arrived, he approached the vehicle parked in the field. He saw two people lying on the ground. One was the deceased "lying face down" and the other was the appellant who was next to her with his right arm over her neck. Both were cover-ed with blood. The deceased had been beaten and stabbed in the neck. The police officer arrested the appellant and was unable to detect a pulse on the deceased.

A bloody knife was found two feet from the body. The victim's broken necklace was found in the appellant's shirt pocket. There was testimony that appellant's knuckles were bruised and "puffy."

Dr. Vincent DeMaio testified that the cause of death was the stab wound to the neck. He also stated that the deceased had suffered numerous facial bruises similar to those caused when someone is "beaten severely with the fists." Also, intact human spermatozoa was found in the vagina of the deceased.

The appellant took the stand to testify in his own behalf. He said that he had a date with the victim on the night of the alleged murder. On that evening, he had met the deceased at a nightclub in Dallas. Later, they went to the apartment of Neal Hamilton where the appellant had been staying for some time. The appellant testified that he and the deceased had sexual intercourse at the apartment. Appellant testified that shortly thereafter Hamilton walked in and began arguing with appellant about appellant drinking Hamilton's beer. Following this argument, the deceased and appellant left and went to the car. Appellant stated that Hamilton followed them, approached appellant, and knocked him unconscious. Appellant then testified in substance that Hamilton was present in the car with the appellant and the deceased and that Hamilton had committed the murder.

In rebuttal, Hamilton testified that neither the appellant nor deceased ever came to his apartment on the night of the murder. Hamilton's son also testified that his father was present in the apartment during the early morning hours of August 23, 1975.

Appellant's sole ground of error complains of testimony admitted over objection as to the results of a blood and saliva test performed on appellant while he was incarcerated.

Prior to trial, the State filed a "Motion For Permission To Obtain A Sample Of Defendant's Blood." The motion was granted by the trial judge, and Sara Williams, a medical technologist, went to the Dallas County jail and performed the blood and saliva tests upon the appellant.

As a result of these tests, Williams testified that she was able to determine that appellant had blood type O and that he was a secretor. She further stated that a secretor is a person whose "body fluids . . . carries his blood group substance." Williams testified that a male secretor's seminal fluid would carry his blood group substance.

Williams had also received from Dr. DeMaio a vaginal smear taken from the deceased. She analyzed the smear and found that it contained blood type O. This established that the seminal fluid contained in the smear came from an individual who was a secretor and had blood type O, since the victim's blood type was A.

Williams had also analyzed the blood found on various garments belonging to both the appellant and the deceased. She stated that she found blood group O on some of the garments that the deceased had been wearing. She said this could have been due to a blood group O secretor perspiring on these garments.

Dr. DeMaio also testified that from his autopsy of the deceased he could only say that she had been beaten and murdered. He stated that the presence of seminal fluid in the vagina of the deceased was as consistent with the theory of recent prior forcible rape as it was with that of recent prior consensual intercourse.

Officer Boone testified that when he found the victim "she was laying face down and [appellant] was laying on his . . . left side right next to her with his right leg thrown on her back and his right arm up around her neck." The deceased's blouse had been pulled up around her neck and her trousers had been unsnapped and partially unzipped.

Appellant complains that the administration of the blood and saliva tests and the admission of Williams' testimony violated his Fourth, Fifth and Sixth Amendment rights. He complains that his Sixth Amendment right was violated because ". . . counsel was not notified to be either in court at the time the Motion was filed or ruled upon . . . and secondly, . . . counsel was not aware [when] such tests were to be made." Appellant argues that counsel could have objected to the taking of the saliva test, since the motion only specified that a blood sample was to be taken and that harm was present in that it was the saliva test which showed appellant to be a secretor.

The State's motion to obtain appellant's blood sample was based upon Rule 167a of the Texas Rules of Civil Procedure. Appellant complains on appeal that such rule is inapplicable. We agree. In *Escamilla v. State* (delivered May 18, 1977), 556 S.W.2d 796 (Tex.Cr.App.1977), we held that the taking of a blood sample is a search and seizure within the meaning of Article I, Section 9, of the Texas Constitution. Consequently, we further held that the State is required to comply with the provisions of Article 1.06 and Chapter 18, V.A.C.C.P.; a motion under Rule 167a, *supra*, is not enough to pass Texas constitutional muster.

■ Nonetheless, the trial court expressly stated for the record that he did not base his order allowing the State to obtain a sample of appellant's blood upon Rule 167a, *supra*. However, the record does not reflect on what basis the trial court did grant the motion. We are of the opinion that there was no basis for the trial court's order.

■ The taking of a defendant's blood is a search and seizure under Texas constitutional law. *Escamilla, supra*; Article I, Section 9, *supra*. To seize blood a warrant must be obtained. *Escamilla, supra*. There can be no exigent circumstances that would dispense with the warrant requirement if the defendant is in custody. A person's blood type remains constant throughout his

**302**

lifetime.[1] A search for blood cannot be based on the incident to a lawful arrest exception. It is not unlawful to possess blood. The possession of blood would not endanger the arresting officer. It would appear that the only exception to the warrant requirement in a search for blood would be that of consent. However,

> "[c]onsent to search must be shown to be positive and unequivocal and the burden is upon the State to show by clear and convincing evidence that the consent was freely and voluntarily given. (Citation). This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority. (Citations)." *Escamilla, supra.*

In the instant case, the record does not affirmatively reflect that such consent was given.

■ Since Article 18.02, V.A.C.C.P., does not list "blood" as one of the "grounds for issuance" of a search warrant, a search warrant may not be issued to search for this type of evidence. Consequently, we hold that absent a consent freely and voluntarily given, and a valid waiver of his Article I, Section 9 right to be free from unreasonable searches, a defendant may not be subjected to a blood test under Texas law, search warrant notwithstanding.

There was no basis for the trial court's order granting the State permission to take a blood sample from appellant. The trial court committed constitutional error.

At oral argument, appellant for the first time complains that he was forced to take the stand in order to rebut the evidence that he claims was erroneously admitted. *See, Nicholas v. State,* 502 S.W.2d 169, 174

---

1. *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), applies in its own factual setting. We are not dealing with the threatened "destruction of evidence." *Id.,* at 770, 86 S.Ct. 1826. A person's blood type is constant.

   > "It bears repeating, however, that we reach this judgment only on the facts of the present record. The integrity of an individual's person is a cherished value of our society. That we today hold that the Constitution does not forbid the State's minor intrusions into an individual's body under stringently limited

(Tex.Cr.App.1973, Opinion on State's Motion for Rehearing).

Appellant probably took the stand in an attempt to explain away every incriminating fact. However, we deem the following significant: Appellant was charged with murder; his principal purpose in testifying was to point the finger at someone else; the presence of his seminal fluid in the vagina of the deceased was as probative of prior forcible rape—the State's theory of the res gestae—as it was of prior consensual intercourse, according to Dr. DeMaio. We believe that Dr. DeMaio's testimony, appellant's testimony that he had intercourse with the deceased shortly before the murder, and the strong circumstantial evidence of appellant's guilt combined to render harmless any evidence that the seminal fluid found in the vagina of the deceased might have been that of appellant.[2] *Cf., Stein v. State,* 514 S.W.2d 927, 929 (Tex.Cr. App.1974); *Warren v. State,* 514 S.W.2d 458, 464 (Tex.Cr.App.1974).

Furthermore, the officer's testimony that he saw both appellant and the deceased lying together "covered with blood" rendered harmless any evidence that the blood type found on some of the deceased's garments was the same as that of appellant. *Cf., Wood v. State,* 511 S.W.2d 37, 47 (Tex. Cr.App.1974); *Miles v. State,* 499 S.W.2d 175, 177 (Tex.Cr.App.1973).

From the record before us, we conclude that the constitutional error committed by allowing the State to take a blood and saliva sample from the appellant was harmless beyond a reasonable doubt. *Jackson v. State,* 548 S.W.2d 685, 693 (Tex.Cr.App. 1977); *Harrington v. California,* 395 U.S.

---

conditions in no way indicates that it permits more substantial intrusions, or intrusions under other conditions." *Id.,* at 772, 86 S.Ct. at 1836.

2. We do not hold, however, that appellant waived his right to complain of the blood and saliva tests because he took the stand and testified. *See, Nicholas v. State, supra; Alvarez v. State,* 511 S.W.2d 493, 498 (Tex.Cr.App. 1974, Opinion on State's Second Motion for Rehearing).

250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

The judgment of the trial court is affirmed.

DOUGLAS, J., concurs in the result for reasons set out in the dissenting opinion in *Escamilla v. State, supra,* on motion for rehearing.