Joe PESINA, Appellant,

v.

The STATE of Texas, Appellee.

No. 168–84.

Court of Criminal Appeals of Texas, En Banc.

Sept. 19, 1984.

Roy Y. Martin, Austin, for appellant.

Margaret Moore, County Atty., and Ben C. Florey, Asst. County Atty., Austin, Robert Huttash, State's Atty., and Alfred Walker, First Asst. State's Atty., Austin, for the State.

OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

ONION, Presiding Judge.

This is an appeal from driving while intoxicated on a public road. Article 6701*l*–1, V.A.C.S. After a bench trial, punishment was assessed at 10 days in jail and a $500.00 fine, probated.

On appeal the appellant complained the trial court erred in overruling his motion to suppress and in admitting evidence of the results of a blood test showing alcoholic content when the test was taken while he was unconscious and did not consent to the taking of the blood.

The Beaumont Court of Appeals reversed the conviction holding that while the results of the blood tests were admissible under the Fourth Amendment of the United States Constitution, it was inadmissible under Article I, § 9 of the Texas Constitution since no consent was given. Finding that without such evidence the State had no case, an acquittal was ordered. *Pesina v. State*, (Tex.App.—Beaumont—1983—No. 09–83090–CR).

We granted the State's petition to determine the correctness of the decision of the Court of Appeals.

A brief recitation of facts is here important to the proper disposition of the appeal.[1]

In the early morning hours of Sunday, August 26, 1978, a collision between two vehicles occurred on Ben White Boulevard in Austin. Stanley Fey and three passengers were driving west on Ben White in a 1975 Cutlass Supreme about 2 a.m. Fey observed a green Chevrolet pickup truck approaching his vehicle from the east which then collided with his vehicle. The police and an ambulance arrived shortly thereafter.

Austin police officer Jerry Castillo arrived at the scene and found the two wrecked vehicles blocking the road. He determined the pickup had been traveling east in a west bound lane. He approached the pickup and found the appellant unconscious under the wheel and in the driver's seat. The appellant did not have any blood on him and externally he did not appear to be injured. In checking appellant's vital signs, he detected a strong odor of alcohol from appellant's breath. Appellant was transferred to the hospital to determine his injuries and Castillo followed shortly thereafter. Castillo conversed with the supervising officer, Holland, whom it was stipulated requested a doctor to perform a blood test.[2] It is clear that at the time appellant was unconscious or in a semi-conscious state and did not consent to the taking of the blood. After a nurse informed Castillo of the results of the blood test (0.19 percent), he placed appellant under arrest. While it is not clear whether it was before or after arrest, Castillo testified that at the hospital the appellant was muttering and stuttering and still smelled strongly of alcohol and that in his opinion, as a police officer, the appellant was intoxicated. Other evidence clearly established appellant was the driver of the pickup at the time of the collision.

---

1. We agree with the Court of Appeals that this is a most confusing record. The first trial was conducted in "bits and pieces" over a period of several months. A new trial was granted. The second trial from which conviction stems was based mainly on stipulations from previous hearings.

2. Castillo first testified a Dr. Connell had taken a blood sample from appellant for the purpose of treatment. He did not know whether officer Holland had talked to the doctor before or after the blood was taken. He later said he had been told Holland requested a blood test, but he had not been present at the time. Later it was stipulated Holland requested the blood test.

The record shows that there was no search warrant authorizing the "seizure" of appellant's blood, and the officers, during the early morning hours and under circumstances, made no effort to obtain a search warrant. Appellant, however, stipulated there were exigent circumstances and the officers did not have time to secure a warrant. It was also agreed that appellant did not consent to the taking of the blood.

The Court of Appeals noted our decision in *Aliff v. State,* 627 S.W.2d 166 (Tex.Cr. App.1982), but distinguished it on the basis that in *Aliff* there was probable cause and in the instant case there was no probable cause. We do not agree.

We conclude that *Aliff,* whose facts are somewhat similar to the instant case, is instructive here, and disposes of the issues raised.

In *Aliff* this Court wrote:

"The appellant contends that the taking of a sample of blood from his body was an unlawful search and seizure under the Fourth Amendment to the United States Constitution and Article I, Section 9 of the Texas Constitution. Additionally the appellant asserts that the sample was obtained in violation of Article 6701l–5, V.A.C.S.

"The evidence reveals that the appellant was traveling along a highway driving in an erratic manner at high speeds. Officer Sellers of the Department of Public Safety observed the appellant's erratic driving and saw him drive on the shoulder of the road and pass another car on the righthand side; the officer pursued the appellant at speeds in excess of 100 miles per hour. The appellant failed to stop for a red light and collided with another vehicle. The driver of the other vehicle died a few hours later. The appellant was also severely injured and was transported to a nearby hospital. The supervising officer, after being informed of the circumstances surrounding the collision, requested that a blood sample be taken from the appellant. The appellant was semi-conscious at the time and did not give his consent to the tak-

ing. Testing revealed that the appellant's blood contained 0.14 per cent alcohol by weight. This evidence was admitted at trial.

"The appellant first argues that the taking of his blood sample was in violation of Article 6701l–5, supra, formerly Article 802f, V.A.P.C. The article states in part:

" 'Section 1. ... Any person arrested may consent to the taking of any other type of chemical test, or tests, to determine alcoholic content of his blood, but he shall not be deemed, solely on the basis of his operation of a motor vehicle upon the public highways of this state, to have given consent to any type of chemical test other than a chemical test, or tests of his breath.'

While consent to obtain a blood sample is not constitutionally required when an accused is under arrest, *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) the statute has enlarged upon what is constitutionally required. The statute requires that consent be obtained from those individuals under arrest. However the statute has been construed to apply only to those persons under arrest, it does not apply to persons not under arrest. *Darland v. State,* 582 S.W.2d 452 (Tex.Cr.App.1979); *Bennett v. State,* 522 S.W.2d 507 (Tex. Cr.App.1975). In the case at bar the appellant was not under arrest when the blood sample was taken. Therefore, Article 6701l–5 has no application to the present case and appellant's contention is without merit. *Darland v. State,* supra; *Bennett v. State,* supra.

"The appellant contends that the taking of the blood was an unlawful search and seizure under both the Texas and the United States Constitutions. The withdrawal of blood from a person is a search. The Supreme Court in *Schmerber v. California,* supra, stated:

" 'But if the compulsory administration of a blood test does not implicate the Fifth Amendment, it plainly involves the broadly conceived reach of a

search and seizure under the Fourth Amendment ... It could not reasonably be argued ... that the administration of the blood test in this case was free of the constraints of the Fourth Amendment. Such testing procedures plainly constitute searches of "persons," and depend antecedently upon seizures of "persons," within the meaning of that Amendment.'

Additionally, the taking of a blood sample is a search and seizure under the Texas Constitution. *Ferguson v. State,* 573 S.W.2d 516 (Tex.Cr.App.1978), cert. denied 442 U.S. 934, 99 S.Ct. 2870, 61 L.Ed.2d 304 (1979); *Smith v. State,* 557 S.W.2d 299 (Tex.Cr.App.1977); *Escamilla v. State,* 556 S.W.2d 796 (Tex.Cr.App. 1977).

"While the taking of a blood sample is a search and seizure, as was noted above, not every warrantless search is constitutionally impermissible. In *Schmerber* the defendant was convicted of the offense of driving an automobile under the influence of an intoxicating liquor. At the direction of a police officer a blood sample was obtained over the defendant's objections. The Supreme Court concluded the search was not unlawful. The Court noted that the percentage of alcohol in the blood diminishes as soon as a person stops drinking and the evidence could not be secured if an officer had to wait until a search warrant was obtained. Thus the Court stated that since the defendant was under arrest when the sample was taken and because of the already ongoing destruction of evidence, the warrantless search was 'an appropriate incident to petitioner's arrest.'

"However in the present case the facts do not squarely fall within the holding of *Schmerber.* Here the appellant was unconscious and not under arrest when the blood sample was taken. The Court in *Schmerber* reached its conclusion only on the facts of that record and the Court added:

" 'That we today hold that the Constitution does not forbid the State's minor intrusions in an individual's body under stringently limited conditions in no way indicates that it permits more substantial intrusions, or intrusions under other conditions.'

"However, we find it unnecessary to determine whether the holding of *Schmerber* extends to the facts of the present case.

"In the case at bar we find that the reasoning and holding of *Cupp v. Murphy,* 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973) control. In that case the defendant was not under arrest when police officers obtained a scraping from his fingernails. The police at the time had probable cause to arrest the defendant but had not done so. The police believed that the defendant was involved in the strangulation murder of his wife. The officers observed a dark spot on one of the defendant's fingers and were aware that in strangulation offenses residue is often left on the offender's fingernails. The police asked if they could get a scraping and the defendant refused and started rubbing his hands together. The police nonetheless obtained the scraping and it was used in evidence against the defendant in trial.

"The Supreme Court determined that the obtaining of the fingernail scraping was a search but that it was lawful. The Court concluded that because of the existence of probable cause to arrest, the very limited nature of the intrusion upon the defendant, and the readily destructibility of the evidence there was no violation of the Fourth Amendment.

"Similarly the warrantless taking of a blood sample despite the lack of an arrest does not violate the Fourth Amendment. First, as with the scraping of a fingernail, the taking of a blood sample is very unintrusive. Indeed the taking of blood is 'routine in our everyday life.' *Breithaupt v. Abram,* 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957). Second, alcohol in blood is quickly consumed and the evidence would be lost forever. Finally, even though the appellant was not under arrest and the officers were still

investigating there was probable cause to arrest the appellant for involuntary manslaughter. Therefore we conclude that the exigencies of the situation in *Cupp v. Murphy,* supra, which justified the warrantless search also existed in the present case. Several other jurisdictions have reached similar results. *Minnesota v. Oevering,* 268 N.W.2d 68 (1978); *DeVaney v. Indiana,* 259 Ind. 483, 288 N.E.2d 732 (1972); *Van Order v. Wyoming,* 600 P.2d 1056 (Wyo.1979); *Oregon v. Heintz,* 286 Or. 239, 594 P.2d 385 (1979); *Montana v. Campbell,* 615 P.2d 190 (Mont.1980). See Annot. 72 A.L. R.3rd 325 (1976). Therefore we conclude that the taking of the blood sample was not an unreasonable search and seizure.

"The appellant in his brief relies upon our holdings in *Ferguson v. State,* supra; *Smith v. State,* supra; *Escamilla v. State,* supra. In each of those cases we noted that under the Texas Constitution that the taking of blood was a search and seizure. However those decisions should not be construed as enlarging the scope of the Article I, Section 9 of the Texas Constitution beyond the scope of the Fourth Amendment. In each of those cases the obtaining of a blood sample without consent or warrant were held to be error. No exigencies existed as in *Schmerber* or *Cupp v. Murphy,* which justified the warrantless searches. The samples were taken to determine blood type, which would remain constant. Thus under either the Texas Constitution or the United States Constitution the searches would have been unlawful. In the present case the exigency of rapidly dissipating alcohol justified the search.

The appellant's ground of error is overruled."[3]

In *Hayes v. State,* 634 S.W.2d 359, 362 (Tex.App.—Amarillo—1982), the court wrote:

"Appellant argues that the blood sample was unlawful search and seizure taken in violation of article 1, § 9 of the Texas Constitution. We note, initially, that appellant's argument must fail because the state was not involved in obtaining the blood sample. *See Vargas v. State,* 542 S.W.2d 151, 153 (Tex.Cr.App. 1976) *cert. den.* 429 U.S. 1109, 97 S.Ct. 1144, 51 L.Ed.2d 562 (1977). Even if there had been state involvement, however, it would not have been error to admit the evidence. The recent Court of Criminal Appeals opinion in *Aliff v. State,* 627 S.W.2d 166 (Tex.Cr.App.1982) permitted a warrantless search via blood sample, obtained at the request of a law enforcement officer, under facts otherwise similar to those in the present case, because of 'the exigency of rapidly dissipating alcohol.' *Id.* at 170. The court stated that the action was permissible where the officers had not arrested the defendant but had probable cause to do so and the alcohol in the blood would be 'quickly consumed and the evidence would be lost forever.' *Id.* at 170. Thus, with or without state involvement, the trial court did not err in admitting the result of the blood alcohol test in this case. Ground of error five is overruled."

In *Burkhalter v. State,* 642 S.W.2d 231 (Tex.App.—Houston (14th Dist.)—1982), the court wrote:

In 1977 Article 18.02 was amended, inter alia, by adding Section (10) (Acts 1977, 65th Leg., p. 640, ch. 237, Sec. 2, effective May 25, 1977). In *Gentry v. State,* 640 S.W.2d 899 (Tex.Cr.App. 1982), it was held that although blood is not specifically itemized in Article 18.02, as amended, providing that a search warrant may be issued to search for and seize certain property or items, it is nonetheless an 'item of evidence' to search for and to seize while a search may issue.

---

**3.** The offense in *Aliff* and the taking of the blood sample occurred in September, 1976.

It is observed that *Escamilla v. State,* 556 S.W.2d 796 (Tex.Cr.App.1977), held that "the taking of a blood sample is a search and seizure within the meaning of Art. I, Sec. 9 of the Texas Constitution, thus the State was required to comply with the provisions of Article 1.06 and Chapter 18, V.A.C.C.P." *Smith v. State,* 557 S.W.2d 299 (Tex.Cr.App.1977), held that since blood was not listed in Article 18.02, V.A.C.C.P., "a search warrant may not issue to search for this type of evidence."

"As we have noted above, a lack of consent to the taking of a blood test presents no constitutional barrier to admitting the results of the blood test into evidence where a defendant was unconscious and not under arrest when a blood sample was taken, the Court of Criminal Appeals recently held that the exigency of rapidly dissipating alcohol justified the obtaining of a blood sample without the donor's consent and the obtaining of a blood sample under those circumstances without warrant or consent is not violative of the state and federal constitutions. *Aliff v. State*, supra. Therefore, appellant's consent to the blood test was not necessary to render the results of that test admissible into evidence for the jury's consideration."

The main thrust of appellant's objection at trial was that there was a search and no consent was given, so as a matter of law the results of the blood test were inadmissible. Under the circumstances the cases above have been decided adversely to his contentions. The trial court did not err in overruling appellant's motion to suppress or his objection to the admissibility of results of the blood test.

The judgment of the Court of Appeals is reversed and the judgment of the trial court affirmed.

CLINTON, Judge, dissenting.

In its opinion the Beaumont Court of Appeals stated, "In *Aliff*, probable cause existed, in the case at bar it did not, and the State does not so contend." Today, however, the majority says, "We do not agree [that in the instant case there was no probable cause]," and finds that *Aliff v. State*, 627 S.W.2d 166 (Tex.Cr.App.1982), "disposes of the issues raised." If the State did not contend for probable cause, how is that one of "the issues raised"? I respectfully dissent to this kind of adjudication on review by the Court. But if the

matter is to be considered we should meet the issue head on.

Probable cause in *Aliff*, plainly set out in the opinion at page 168, was that the DPS trooper "observed the appellant's erratic driving and saw him pass another car on the righthand side [and] pursued the appellant at speeds in excess of 100 miles per hour [until] appellant failed to stop for a red light and collided with another vehicle." Those are not the facts in the case at bar, and the majority does not tell us what facts do constitute probable cause. That Officer Castillo merely "detected a strong odor from appellant's breath" surely is not enough to justify a warrantless intrusion into the person of appellant.

Moreover, supervising officer Holland requested the blood test, not Castillo. Although the majority says that Castillo "conversed" with Holland, it does not give us even a hint of content of that conversation. It seems highly unlikely that Castillo would be talking to Holland about having blood tested, since he testified that blood was taken from appellant by a doctor "for the purpose of treatment." We are left to wonder just what probable cause Holland had in his mind for having a doctor take blood from appellant.

In addition, one must agree with Judge Teague that *Aliff* was wrongly decided, at least insofar as premised on the proposition it drew from *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), namely: "that the percentage of alcohol in the blood diminishes as soon as a person stops drinking," *Aliff*, at 169. The "new" DWI law recognizes the fallacy of that proposition by providing that one who gives a specimen at the instance of a peace officer "may, upon request and within a reasonable time *not to exceed two hours after the arrest*," have his blood drawn by a qualified person of his own choosing and have an analysis made for his own purposes. Article 6701*l*–5, § 3(d), V.A.C.S.[1] The reason has been partially explained in

1. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

a paper done by Office of the Scientific Director, Crime Laboratory Division, Department of Public Safety, *viz:*

"Ingested alcohol is absorbed into the blood from the digestive tract. A small amoutn is absorbed from the stomach, but most of it is absorbed from the small intestine. Foods and liquids in the stomach will slow down the rate of absorption of alcohol.[2]

... The liver oxidizes or burns up alcohol in the circulatory system. The average oxidation rate will dispose of about one-third ounce of alcohol per hour."

"DWI: A Judicial Alternatives Manual" (The Texas Center for the Judiciary, Inc. 1984) Appendix B, p. B18.

Thus, what the Supreme Court was "told" in 1966 is not true today. Nor is it accurate to find, as *Aliff* did, that "alcohol in blood is quickly consumed,"˙or that there is "the exigency of rapidly dissipating alcohol," *id.*, at 170, without *some* satisfactory proof to support the finding. If there is any in the record of this cause, the majority does not allude to it. As judges, we cannot find true that which is demonstrably false.

For the reasons given, I dissent.

TEAGUE, Judge, dissenting.

Because the majority opinion is just as legally wrong as the majority *panel* opinion of this Court was in *Aliff v. State*, 627 S.W.2d 166 (Tex.Cr.App.1982), which is the majority's authority for reversing the excellent opinion of the Beaumont Court of Appeals, which was authored by its Chief Justice, Hon. Martin Dies, Jr., I am compelled to dissent for the same reasons I expressed in the dissenting opinion I filed in *Aliff v. State*, supra. I point out that no rehearing was sought by either the defendant or the State in *Aliff v. State*, supra.

**2.** Elsewhere we learn the reason for the slowdown:

"... The alcohol reaches the intestines via the pyloric valve. It may have been in the stomach from one-half hour up to four hours, depending upon a number of factors.

The absorption time of alcohol varies with the type of alcoholic beverage ingested,

Thus, *Aliff* only represents the voice of one former judge of this Court, who was joined in chorus by another former judge of this Court. *Aliff,* supra, along with all cases which have followed it, should be expressly overruled.

The decision of the Beaumont Court of Appeals, finding that the taking of appellant's blood without a warrant was error, should be affirmed. However, its decision ordering an acquittal is clearly erroneous. Therefore, the judgment of the court of appeals should be affirmed but the cause should be remanded to the trial court for retrial. To the failure of the majority to enter such an order, I respectfully dissent.

MILLER, J., joins.

whether the beverage is diluted or not, whether food is present in the stomach, and whether the individual has stomach problems... The slower the absorption, the lower is the resultant peak blood alcohol concentration."

Frajola, *Defending Drinking Drivers* 16.1.