

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

---
### NO. PD-0438-18
---

**RICHARD HYLAND, Appellant**

**v.**

**THE STATE OF TEXAS**

---
### ON STATE'S PETITION FOR DISCRETIONARY REVIEW FROM THE THIRTEENTH COURT OF APPEALS NUECES COUNTY
---

YEARY, J., delivered the opinion of the Court in which KELLER, P.J., and KEASLER, HERVEY, RICHARDSON, KEEL, WALKER, and SLAUGHTER, JJ., joined. HERVEY, J., filed a concurring opinion in which RICHARDSON, WALKER, and SLAUGHTER, JJ., joined. NEWELL, J., concurred.

### O P I N I O N

Appellant, Richard Hyland, while operating his motorcycle on which his wife was a passenger, was involved in an accident that injured him seriously and killed his wife. An investigating officer subsequently obtained a search warrant for and then obtained a sample of Appellant's blood, which demonstrated that he was intoxicated. Appellant was convicted

of the intoxication manslaughter of his wife, but the Thirteenth Court of Appeals reversed Appellant's conviction. The court of appeals held that, after the trial court conducted a *Franks*[1] hearing and excised portions of the officer's blood-draw search warrant affidavit, the remaining facts in the affidavit did not support a finding of probable cause that evidence of driving while intoxicated would be found in Appellant's blood. *Hyland v. State*, No. 13-16-00596-CR, 2018 WL 1633487, at *6 (Tex. App.—Corpus Christi–Edinburg Apr. 5, 2018) (not designated for publication). Specifically, the court of appeals held that, in light of this Court's decision in *McClintock I*,[2] and the Eleventh Court of Appeals' unpublished decision in *State v. Lollar*, the excised affidavit did not "*clearly*" establish probable cause. *Id.* (citing *McClintock v. State*, 444 S.W.3d 15, 20 (Tex. Crim. App. 2014), and *State v. Lollar*, No. 11-10-00158-CR, 2012 WL 3264428 (Tex. App.—Eastland Aug. 9, 2012) (not designated for publication)).

We granted the State's petition for discretionary review to determine: (1) whether a sustained *Franks* motion and the consequent purging of false statements from a search warrant affidavit trigger a heightened probable cause standard—namely, that the affidavit must "*clearly*" establish probable cause;[3] and (2) whether a police officer's detection of the

---

[1] *Franks v. Delaware*, 438 U.S. 154 (1978).

[2] Our Court has two opinions relating to the same *McClintock* case: one opinion that was issued in 2014 (444 S.W.3d 15 (Tex. Crim. App. 2014)), and another that was issued in 2017 (541 S.W.3d 63 (Tex. Crim. App. 2017)). In the present opinion, we reference only the first *McClintock* opinion from our Court, which we will refer to as "*McClintock I.*"

[3] *McClintock*, 444 S.W.3d at 20.

strong smell of alcohol emanating from the driver of a motor vehicle that was involved in a serious, single-vehicle accident supports a finding of probable cause that evidence of driving while intoxicated would be found in the driver's blood. We reverse the holding of the court of appeals.

## I. BACKGROUND

### A. The Accident[4]

Appellant and his wife, Jaime Doherty, left the Frontier Saloon in Corpus Christi shortly before 10:50 p.m. on May 30, 2014. Appellant drove his motorcycle while Doherty rode on the back. Shortly after leaving the bar, Appellant lost control of his motorcycle and careened off the road. When first responders arrived at the scene of the accident they found Doherty on the side of the road, deceased, and Appellant, who had sustained serious injuries and was unconscious, nearby.

Corpus Christi Police Officer Raymond Harrison arrived on the scene as Appellant was being transported to the hospital. Harrison conducted an investigation at the scene, which included speaking with eyewitnesses who indicated that Appellant was the driver of the motorcycle. Harrison left the accident scene and drove to the hospital to continue his

---

[4] These facts surrounding the accident came to light during Appellant's trial and are provided here strictly for background information. Not all of these facts are part of our probable cause analysis, which is confined only to the information contained within the four corners of the search warrant affidavit, as discussed later in this opinion. *See Massey v. State*, 933 S.W.2d 141, 148 (Tex. Crim. App. 1996) ("[W]e look at the four corners of the affidavit in determining the existence of probable cause to search the identified locations. Statements made during the pretrial hearing do not factor into that determination.") (citation omitted).

investigation into whether Appellant committed an offense. At the hospital, Harrison detected a strong odor of alcohol emanating from Appellant's unconscious body. Believing that Appellant was under the influence of alcohol at the time of the accident and, therefore, may have committed at least the offense of driving while intoxicated, Harrison completed a pre-printed search warrant affidavit form that the Corpus Christi Police Department uses to obtain search warrants for blood or breath in driving while intoxicated investigations.[5] After obtaining a search warrant, Harrison directed the on-duty phlebotomist at the hospital to take a sample of Appellant's blood, which revealed a blood alcohol concentration level of 0.19.

## B. The Search Warrant Affidavit

The pre-printed affidavit form that Officer Harrison filled out contains introductory and concluding statements and nine numbered paragraphs, each of which contains brief statements, and some of which include blank lines for the affiant to use to conform the affidavit to the specific facts of a given case.[6] The introductory statement contains a line on

---

[5] Officer Harrison completed an affidavit for the offense of driving while intoxicated—not intoxication manslaughter. Appellant was ultimately prosecuted for and convicted of the offense of intoxication manslaughter because his wife died in the crash. Nevertheless, driving while intoxicated is a lesser-included offense of intoxication manslaughter. *Compare* TEX. PENAL CODE § 49.08(a) ("A person commits an offense if the person: (1) operates a motor vehicle in a public place . . . ; and (2) is intoxicated and by reason of that intoxication causes the death of another by accident or mistake."), *with* TEX. PENAL CODE § 49.04(a) ("A person commits an offense if the person is intoxicated while operating a motor vehicle in a public place.").

[6] Nowhere on the form is there any way for the affiant to indicate that certain paragraphs do not apply in a particular case, short of striking out such a paragraph entirely, which Officer Harrison did not do.

which the affiant, Harrison, listed his name and badge number, and identified himself as a peace officer with the Corpus Christi Police Department. It also contains another line on which Harrison indicated he has been a certified police officer for nine years.

The first numbered paragraph (Paragraph 1) contains lines on which an affiant may provide identifying information about the suspect. On that line, Officer Harrison identified the suspect as Richard Hyland, a white male whose date of birth is January 5, 1984, who is six feet tall, weighs 170 pounds, and has brown hair. Paragraphs 2 and 3, which are entirely pre-printed and contain no additions by Harrison, then state that the suspect is in the custody of the Corpus Christi Police Department and that he has possession of and is concealing human blood, which constitutes evidence that he committed the offense described in Paragraph 4. The next paragraph, Paragraph 4, contains date and time blanks and the elements of the offense of driving while intoxicated. Harrison conformed the blank lines in this paragraph to reflect that on May 30, 2014, at 10:50 p.m., Hyland committed the offense of driving while intoxicated. Paragraph 5 contains three options to indicate how the affiant knows that the suspect was operating a motor vehicle in a public place (one of the elements of the offense of driving while intoxicated): (1) the affiant's personal observation; (2) the suspect's own admission; or (3) an eyewitness account. Officer Harrison put an "X" on the line next to the eyewitness account option to indicate its applicability to this case, and Harrison included the names and addresses of two eyewitnesses who observed Appellant operating a motor vehicle in a public place.

Paragraph 6 contains a list of potential observations that might lead a person to reach a conclusion about whether a suspect was intoxicated while driving. The list includes general appearance, odor of alcohol, condition of eyes, speech, attitude, and balance. Each of these options is followed by a line on which an affiant can elaborate about the specific observations. On the blank line following the option titled "general appearance," Officer Harrison wrote "bloody," and on the blank line following "odor of alcohol," Harrison wrote "strong."

Paragraph 8 begins with the following statement: "Additional facts leading me to believe that the suspect was intoxicated while operating a motor vehicle in a public place are as follows[.]" That statement is followed on the form by lines on which Officer Harrison wrote: "Involved in motorcycle crash (case # 1402159). Passenger DOA and suspect is in coma at Spohn Memorial Hospital."[7]

Paragraphs 7 and 9 of the affidavit form are entirely pre-printed paragraphs with no space for the affiant to add additional information. Paragraph 7 reads:

---

[7] Paragraph 8 of the pre-printed affidavit form also incorporates by reference a "Probable Cause Statement" that the affiant can complete and attach to the affidavit. Officer Harrison purported to attach a Probable Cause Statement to his affidavit. But based on the content of the Probable Cause Statement in the record, it is clear that Harrison completed this statement *after* he had already obtained the search warrant from the magistrate. As a result, the magistrate could not have relied on the Probable Cause Statement in making his probable cause determination. The court of appeals correctly refused to rely on the Probable Cause Statement, pointing out that the trial judge himself did not appear to rely on the Probable Cause Statement in evaluating probable cause after sustaining Appellant's *Franks* objection. *Hyland*, 2018 WL 1633487, at *2. We, therefore, will not rely on Harrison's Probable Cause Statement that is in the record.

> I requested performance of field sobriety tests by the suspect and recorded the results and my observations of the suspect's performance of filed [sic] sobriety tests and signs of intoxication in the attached SFST SCORING SHEET, which is attached hereto and incorporated herein for all purposes.[8]

Paragraph 9 reads:

> I have seen intoxicated persons on many occasions in the past. Based on all of the above and my experience and training, I determined that the suspect was intoxicated, and I placed the suspect under arrest for Driving While Intoxicated. I requested a sample of the suspect's breath and/or blood, which the suspect refused to provide.

Officer Harrison did not make any alterations to these pre-printed paragraphs in the affidavit. He signed the affidavit, dated it, marked it with the time ("1:18"), and submitted it to a magistrate, who issued a search warrant to extract Appellant's blood.

### C. Statements Excised from the Affidavit

At trial, and before allowing the blood sample to be entered into evidence, the trial court conducted a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), to address Appellant's contention that the search warrant was issued on the basis of falsified statements in Officer Harrison's affidavit. Specifically, Appellant argued that Paragraphs 7 and 9 could not possibly be true because Appellant had been unconscious, and thus he could not have performed field sobriety tests or withheld consent to a blood draw.[9] Accordingly, Appellant

---

[8] Unsurprisingly, given Appellant's unconscious condition following the crash, there was no SFST Scoring Sheet attached to Officer Harrison's affidavit.

[9] Officer Harrison testified at the *Franks* hearing that, even though Appellant was unconscious and in a coma in the hospital, he still read Appellant the statutory admonishments before obtaining the search warrant. Obviously, Appellant did not expressly refuse at that time to provide a blood specimen.

argued that these were false statements made with at least a reckless disregard for the truth, and that they should be excised in accordance with *Franks*.

After conducting a hearing at which Officer Harrison testified, the trial court excised Paragraph 7 in its entirety and excised the last sentence of Paragraph 9, leaving intact the rest of that paragraph. The trial court then determined that the remaining facts in the affidavit were sufficient to support a finding of probable cause, and it permitted the blood evidence to be submitted to the jury. At the conclusion of trial, the jury convicted Appellant of the offense of intoxication manslaughter and sentenced him to twenty-seven years in prison.

### D. On Appeal

On appeal, Appellant argued, among other things, that after the false statements were excised from the search warrant affidavit, the remaining facts did not support a probable cause finding. The court of appeals agreed and concluded that the remaining facts—that Appellant was driving a motorcycle, that he was involved in a serious, single-vehicle accident, and that Officer Harrison smelled a strong odor of alcohol emanating from Appellant—did not "*clearly*" support a finding of probable cause. *Hyland*, 2018 WL 1633487, at *6. In reaching this conclusion, the court of appeals relied on our holding in *McClintock I*, in which we said that, after a court of appeals struck certain statements from a search warrant affidavit, the remaining facts in the affidavit did not "*clearly* establish[]" probable cause." *McClintock*, 444 S.W.3d at 20. As a result, the court of appeals reversed Appellant's conviction. *Hyland,* 2018 WL 1633487*,* at *13.

**E. Discretionary Review**

In its petition for discretionary review, the State first argues that, when a *Franks* objection is sustained and certain statements are excised from a search warrant affidavit, the standard of review for determining whether the balance of the affidavit supports a finding of probable cause is not heightened. The State contends that this Court's use of the word "*clearly*" in *McClintock I* was not meant to convey that the probable cause standard is any higher after false statements have been excised from an affidavit. Second, the State argues that the facts remaining in Officer Harrison's search warrant affidavit are sufficient to support a finding of probable cause. We agree. A court reviewing a search warrant affidavit after false statements have been excised should not employ a heightened probable cause standard. In addition, the facts remaining in the affidavit in Appellant's case support the trial court's finding of probable cause to believe that evidence of driving while intoxicated would be found in Appellant's blood. Accordingly, we reverse the holding of the court of appeals.

## II. APPLICABLE LAW

Under both the Texas and the United States constitutions, a search warrant for the extraction of blood from a person who the police believe to have committed an intoxication offense must be based on probable cause that evidence of that offense will be found through the execution of a blood-draw search warrant. U.S. CONST. amend. IV; TEX. CONST. art. I, § 9; *see also Sanchez v. State*, 365 S.W.3d 681, 684 (Tex. Crim. App. 2012) ("Although a blood draw constitutes a search under the Fourth Amendment, the Constitution will not be

offended if the draw occurs pursuant to a valid search warrant."). Probable cause "exists when reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead a man of reasonable prudence to believe that the instrumentality of a crime or evidence pertaining to a crime will be found." *Washington v. State*, 660 S.W.2d 533, 535 (Tex. Crim. App. 1983). In determining whether probable cause exists to support the issuance of a search warrant, the magistrate to whom the probable cause affidavit is presented is confined to considering the four corners of the search warrant affidavit, as well as to logical inferences the magistrate might draw based on the facts contained in the affidavit. *See State v. Elrod*, 538 S.W.3d 551, 554 (Tex. Crim. App. 2017) ("[A]lthough the magistrate's determination of probable cause must be based on the facts contained within the four corners of the affidavit, the magistrate may use logic and common sense to make inferences based on those facts."). The determination of whether probable cause exists is a "totality of the circumstances" inquiry, based on the magistrate's reasonable reading of the affidavit, but the magistrate may not act as a mere "rubber stamp." *State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012).

Generally, a reviewing court applies a presumption of validity regarding a magistrate's determination that a search warrant affidavit supports a finding of probable cause. *Franks*, 438 U.S. at 171. As a result, when reviewing a magistrate's probable cause determination, a reviewing court—which in this context can be a trial judge or an appellate court—must ordinarily "view the magistrate's decision to issue the warrant with great deference." *Jones*

*v. State*, 364 S.W.3d 854, 857 (Tex. Crim. App. 2012); *see also Massachusetts v. Upton*, 466 U.S. 727, 733 (1984) ("A deferential standard of review is appropriate to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant."). A trial judge or an appellate court examining a magistrate's probable cause determination "must uphold the magistrate's decision so long as the magistrate had a substantial basis" for his finding. *Duarte*, 389 S.W.3d at 354; *see also Illinois v. Gates*, 462 U.S. 213, 239 (1983) (holding the affidavit "must provide the magistrate with a substantial basis for determining the existence of probable cause" for issuance of a search warrant); *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011) ("As long as the magistrate had a substantial basis for concluding that probable cause existed, we will uphold the magistrate's probable cause determination.").

But the presumption of validity regarding the magistrate's probable cause determination may be overcome if the defendant can show the presence of false statements in the search warrant affidavit that were either made deliberately or with reckless disregard for truth. *Franks*, 438 U.S. at 171. Such statements must be purged from the affidavit, and it is then up to the reviewing judge to determine whether probable cause exists absent the excised statements. *Id.* at 171–72. When portions of a search warrant affidavit have been excised and a reviewing court re-examines the balance of the affidavit, the reviewing court should no longer give deference to the magistrate's initial probable cause determination—and should therefore abandon the usual "substantial basis" analysis—because the reviewing court

is now examining a new, different affidavit. *McClintock,* 444 S.W.3d at 19. The question for the reviewing court becomes the same as it would be for a magistrate conducting an initial review of a search warrant affidavit: Whether the remaining statements in the affidavit establish probable cause. In resolving that question, "reviewing courts are still required to read the purged affidavit in accordance with *Illinois v. Gates*[,]" and must therefore undertake a totality-of-the-circumstances approach. *State v. Le,* 463 S.W.3d 872, 877 (Tex. Crim. App. 2015).

### III. ANALYSIS

### A. Probable Cause Review After Appellant's *Franks* Hearing

The court of appeals' opinion treated our use of the word "*clearly*" in *McClintock I* as evidence of a heightened probable cause standard for assessing whether probable cause exists from the facts remaining in a search warrant affidavit that has been partially excised pursuant to *Franks*. *See Hyland*, 2018 WL 1633487, at *5 (describing that when a "trial court has sustained a *Franks* motion and purged false statements from a warrant affidavit," this "trigger[s] the requirement that the independently acquired and lawful information stated in the affidavit must 'clearly' establish probable cause"). Indeed, the court of appeals repeatedly quoted *McClintock I* for the proposition that the probable cause requirement after a sustained *Franks* objection is that the affidavit must "clearly" establish probable cause. The State contends, however, that after a trial court sustains a defendant's *Franks* objection and strikes statements from a search warrant affidavit, the standard for determining whether probable

cause is shown in the balance of the affidavit remains the same. There is not, the State argues, a heightened legal standard for determining the existence of probable cause when a reviewing court assesses the facts remaining in an excised search warrant affidavit. In fact, the State accurately observes that the United States Supreme Court in *Franks* said nothing about a heightened probable cause standard after false statements are stricken from a search warrant affidavit. *Franks,* 438 U.S. at 172 ("[I]f, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.").

*McClintock I* was not, strictly speaking, a *Franks* case—that is, one in which the affidavit contained false statements that were deliberately or recklessly made. Instead, it involved the question of how to evaluate the existence of probable cause in an affidavit after information had been stricken from it because it had been acquired unlawfully. We have long held in that context that, before a search may be justified on the basis of such a partially-tainted warrant affidavit, it must be "clear" that what remains after the tainted material has been excised still satisfies the probable cause standard. *See McClintock I*, 444 S.W.3d at 19 & n.17 (citing *Castillo v. State*, 818 S.W.2d 803, 805 (Tex. Crim. App. 1991), which, in turn, cites *Brown v. State*, 605 S.W.2d 572, 577 (Tex. Crim. App 1980)).

In our 1980 opinion in *Brown v. State*, we cited LaFave's treatise for the proposition that, "in cases where search warrants have been issued on the basis of an affidavit that included tainted information, . . . the warrant is nonetheless valid if it *clearly* could have been

issued on the basis of the untainted information in the affidavit. W. LaFave, 3 SEARCH & SEIZURE, Section 11.4(f) at 651 ([1st ed.] 1978)." 605 S.W.2d at 577 (emphasis added). Professor LaFave suggested that, in cases in which, absent the tainted content, the warrant affidavit's sufficiency to satisfy the probable cause standard becomes "doubtful," a reviewing court conducting its *de novo* review should err on the side of striking the warrant. 3 W. LaFave, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 11.4(f), at 650–51 (1st ed. 1978). But we have never suggested that our use of the word "clearly" was intended to enshrine a "heightened" probable cause standard. *See, e.g.*, *Le*, 463 S.W.3d at 877–78 (noting that a search warrant will be regarded as valid "if it clearly could have been issued on the basis of the untainted information[,]" but then applying the ordinary probable cause standard to evaluate the sufficiency of the untainted information).

We acknowledged in *Le* that the deference that reviewing courts ordinarily owe to a magistrate's conclusion regarding the adequacy of a warrant affidavit "is not called for when the question becomes whether an affidavit, stricken of its tainted information, meets the standard of probable cause." *Id*. at 877. But this abandonment of the deference to magistrates in cases in which a warrant affidavit has been excised also in no way reflects an enhancement to the probable cause standard itself—even in the non-*Franks* context of the *Le-McClintock I-Castillo-Brown* line of cases. Moreover, in *Franks* itself, the Supreme Court indicated that "if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause," then no grounds exist for invalidating the warrant. *Franks*, 438 U.S. at 171–72. Even

assuming that *McClintock I*'s use of the word "*clearly*" should be imported into a *Franks* analysis, it would only express the notion that a reviewing court must ensure that whatever remains in the purged affidavit is still enough to establish probable cause that evidence of a crime will be found.

### B. Do the Remaining Facts in the Affidavit Establish Probable Cause?

Having concluded that there is no heightened probable cause requirement following a sustained *Franks* objection, we now turn to the State's second question: Do the facts remaining in Officer Harrison's affidavit—in this case—support a finding of probable cause that evidence of driving while intoxicated would be found through the execution of a blood-draw search warrant?[10] Those remaining facts were: (1) Appellant was recently involved in a serious, single-vehicle accident that resulted in critical injuries to Appellant and the death of his wife; (2) Appellant was the driver of the motorcycle that was involved; and (3) Harrison, an experienced police officer, detected an odor of alcohol emanating from Appellant after the accident that he characterized in the search warrant affidavit as "strong." We conclude that these facts sufficed to support a finding of probable cause that evidence of the offense of driving while intoxicated would be found in a search of Appellant's blood.

---

[10] The case before us does not squarely present the question of what the proper appellate standard of review should be with respect to the trial court's determination that the remaining information in the warrant affidavit provided probable cause. Should the appellate courts review such a determination deferentially or *de novo*? We need not resolve the standard-of-review issue today. In this case, the trial court held that the redacted affidavit still sufficed to provide probable cause. Like the trial court, we conclude that the information remaining in the warrant affidavit is sufficient to supply probable cause. Because our resolution of the probable cause question would be the same regardless of whether we applied a deferential or *de novo* standard of review to the trial court's historical fact or credibility determinations, we may leave that question for another day.

The court of appeals determined that these remaining facts did not support a finding of probable cause. In making this determination, the court of appeals relied on this Court's opinion in *McClintock I*, and also on an unpublished opinion from the Eleventh Court of Appeals called *Lollar*. *McClintock*, 444 S.W.3d at 15; *Lollar*, 2012 WL 3264428, at *1. But Appellant's case is distinguishable from the facts in both of those cases, and we are not bound by the decisions of the courts of appeals—and much less by those that are unpublished.[11]

*McClintock I* was a search and seizure case in which we held that the statements remaining in a search warrant affidavit—after the court of appeals excised portions of the affidavit—did not support a finding of probable cause that illegal narcotics would be found inside a particular apartment. *McClintock*, 444 S.W.3d at 20. There, a police officer submitted an affidavit to a magistrate for a warrant to search a second-story apartment above a business. *Id.* at 16. The officer stated in the affidavit that he received information that marijuana was being grown in the apartment; that he observed a male person frequenting the upstairs apartment through a publicly-accessible stairwell during non-business hours; that he smelled the odor of marijuana outside the building; and that a drug dog alerted to the smell

---

[11] The officer in *Lollar* claimed in the affidavit that the appellee admitted to the officer that she "had been operating a motor vehicle in a public place in Jones County, Texas . . . just 7 minutes prior" to the officer's arrival. This fact in the affidavit was proven to instead be an inference the officer drew based on a conversation with the appellee. In addition, the odor of alcohol the arresting officer detected in *Lollar* was not described as "strong," as it was in this case. Finally, in reaching its conclusion, the *Lollar* court did not rely on the *McClintock I* "*clearly* established probable cause" language that the court of appeals relied on in this case. Even if *Lollar* were a published opinion with precedential value, it would not control our decision, and these important differences make *Lollar* distinguishable.

of narcotics outside the second floor apartment's doorway. *Id.* at 16–17. The appellant moved to suppress evidence that was found through the search of the apartment, contending that the dog sniff described in the search warrant affidavit constituted an illegal search. *Id.* at 17. The trial court denied the motion to suppress, and the appellant pleaded guilty, retaining his right to appeal. *Id.*

The court of appeals found that the drug-dog sniff constituted an illegal search, and it excised the statements referring to the dog sniff from the affidavit. *Id.* at 18. Reviewing the search warrant affidavit without the dog sniff information, the court of appeals concluded that the trial court erred in denying the appellant's motion to suppress. *Id.* This Court held that the remaining facts in the affidavit—that an officer smelled marijuana outside the building (not specifically from the upstairs apartment), that a male person was seen entering and leaving the upstairs apartment at odd hours, and that the officer received information that marijuana was being grown in the building—did not "*clearly* establish[] probable cause" for the search of the upstairs apartment. *Id.* at 19–20.

The court of appeals in this case likened the facts presented here to those presented in *McClintock I*. It explained that "the redacted affidavit's theory of probable cause rest[ed] solely on smell and circumstances: the vaguely-described smell of alcohol and the circumstance of a fatal collision." *Hyland,* 2018 WL 1633487, at *5. But in its focus on "smell and circumstances[,]" the court of appeals did not observe how the particular facts in this case are different. *Id.* In this case, Officer Harrison indicated in his search warrant affidavit that he smelled a "strong odor" of alcohol on Appellant's person: "I made the

following observations about the suspect: . . . Odor of alcohol: strong." The court of appeals' opinion paid little attention to this fact. Instead, it characterized Harrison's description as: "the vaguely-described smell of alcohol." *Id.* Harrison did not "vaguely" describe the smell of alcohol—to the contrary, he articulated the smell as "strong" and related it directly to Appellant.

Officer Harrison's description of the odor of alcohol separates this case from *McClintock I*. In *McClintock I*, the officer smelled the odor of marijuana outside of a two-story building. *McClintock*, 444 S.W.3d at 17. The apartment that was ultimately searched was located on the second floor of that building. *Id.* This Court concluded that, aside from the excised information concerning the dog alert outside the door to the second-floor apartment, the officer did not include any facts in his search warrant affidavit that tied the odor specifically to the second-floor apartment. *Id.* at 19–20. Instead, the officer said in his affidavit: "[F]rom the outside of this location, Affiant could smell, what Affiant knows from training and experience to be, marijuana." *Id.* at 17. Unlike Harrison's description of the odor of alcohol, the *McClintock I* officer's description of the odor did not include the word "strong," and the officer did not even state that the smell was emanating from the building, much less the apartment located on the second floor of the building. Harrison, on the other hand, described the strong odor of alcohol as an observation about Appellant—a specific person. There was also a wide range of possible descriptors that Harrison could have chosen to categorize the smell of alcohol, including the possibility of none at all, yet he chose the word "strong."

In *Pesina v. State*, 676 S.W.2d 122 (Tex. Crim. App. 1984), this Court concluded that facts showing that a driver of a motor vehicle who had just sustained serious injuries in an automobile accident, and from whom a police officer detected a "strong odor" of alcohol, supported a finding of probable cause that evidence of driving while intoxicated would be found in a suspect's blood. *See id.* at 124 (disagreeing with the court of appeals' conclusion that such facts did not support a finding of probable cause). *Pesina* dealt with, among other things, whether the exigencies of a certain situation justified the warrantless extraction of blood from a suspect. But in assaying that question, we concluded that those facts supported a finding of probable cause, which is necessary for any search conducted pursuant to a warrant. *Id.*

Appellant argues that additional facts existed in *Pesina* beyond the smell of alcohol and the circumstances of a serious collision that supported the Court's probable cause finding. Specifically, Appellant points to the evidence in *Pesina* that the defendant was muttering and stumbling. But, as we pointed out in our opinion in *Pesina*, it was not clear whether the muttering and stumbling occurred before or after the blood test. And we concluded that, in any event, "[o]ther evidence clearly established appellant was the driver of the pickup at the time of the collision." *Id.* at 123. *Pesina* thus supports our holding today that facts showing the strong odor of alcohol coming from a driver who has recently been involved in a serious motor vehicle accident resulting in significant injuries demonstrate probable cause to believe that evidence of intoxication will be found in the driver's blood.

The odor of alcohol that Officer Harrison detected on Appellant's person was an

important piece of information in his probable cause affidavit, but the odor was not the only thing in the affidavit to suggest that Appellant's blood contained evidence of an intoxicated driving offense. Harrison arrived at what was no doubt a horrific scene: a motorcycle crashed, leaving its passenger deceased and the driver bloodied and in a coma. Harrison acquired eyewitness statements that Appellant was the driver of the motorcycle. Indeed, the facts in Harrison's affidavit—the strong odor of alcohol and the circumstances of the crash itself, including the fact that Appellant was the driver of the motorcycle, and the serious injuries that resulted—coalesced to support a probable cause finding that evidence of a driving while intoxicated offense would be found in Appellant's blood, just as the odor evidence and circumstance evidence in *Pesina* combined to support a probable cause finding.

When we consider the totality of the remaining facts in Officer Harrison's search warrant affidavit, giving no deference to the magistrate's initial reading of those facts, we conclude that it still demonstrated the existence of probable cause. Appellant was known to be the driver of a motorcycle that had recently been involved in a serious, single-vehicle accident that resulted in a fatality and serious injuries to himself. Also, Harrison detected the strong odor of alcohol emanating from Appellant's person. Taken together, these were "reasonably trustworthy facts and circumstances within the knowledge of" Harrison that "would lead a man of reasonable prudence to believe that . . . evidence pertaining to a crime [would] be found" in a search of Appellant's blood. *Washington*, 660 S.W.2d at 535.

## IV. CONCLUSION

For the foregoing reasons, we reverse the judgment of the court of appeals and remand

the cause to that court for disposition of Appellant's remaining points of error.


DELIVERED:          June 5, 2019
PUBLISH